Michael G. Marderosian, No. 77296
Heather S. Cohen, No. 263093
MARDEROSIAN & COHEN
1260 Fulton Street
Fresno, CA 93721
Telephone: (559) 441-7991
Facsimile: (559) 441-8170
Attorneys for: Plaintiff JAMES K. JORDAN

MICHAEL M. VASSEGHI (SBN 210737)
michael.vasseghi@roll.com
J. P. PECHT (SBN 233708)
jp.pecht@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone:     (310) 966-8400
Facsimile:     (310) 966-8810

Attorneys for Defendant
Wonderful Citrus Packing LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| JAMES K. JORDAN,<br><br>       Plaintiff,<br><br>    vs.<br><br>WONDERFUL CITRUS PACKING LLC, a California limited liability company, and DOES 1 -10, inclusive,<br><br>       Defendants.<br><hr>WONDERFUL CITRUS PACKING LLC, a California limited liability company,<br><br>       Counter-Claimant,<br><br>    vs.<br><br>JAMES K. JORDAN AND DOES 1-10,<br><br>       Counter-Defendants. | Case No. 1:18-cv-00401-AWI-SAB<br><br>**JOINT STATEMENT OF DISCOVERY DISAGREEMENT REGARDING ADDITIONAL DEPOSITIONS PURSUANT TO LOCAL RULE 251; FRCP 30(a)(2)(A)(i); 26(b)(2)**<br><br>Hearing<br>Date:     January 9, 2019<br>Time:     10:00 a.m.<br>Location:  Courtroom 9<br>Judge:    Hon. Judge Stanley A.<br>           Boone<br><br>[Assigned to the Honorable Anthony W. Ishii (AWI)] |

Pursuant to Local Rule 251, the Parties hereby submit the following Joint Statement Re Discovery Disagreement.

## I.

## RELIEF SOUGHT

**1.   Plaintiff's Statement**

By and through this motion, Plaintiff James Jordan seeks to exceed the limitation on the number of depositions a party may take pursuant to Fed. R. Civ. P. 30(a)(2)(A)(i). Specifically, Plaintiff requests leave of Court to take a total of 25 depositions, 15 more than the presumptive limit set forth in the Federal Rules of Civil Procedure.

As is set forth herein, the Plaintiff, James Jordan, alleges that he was wrongfully terminated by his employer of 27 years, Wonderful Citrus Packing, LLC ("Wonderful"). [Dkt No. 1]. Wonderful has filed a Counterclaim against Mr. Jordan alleging that Mr. Jordan engaged in a complex scheme to steal and embezzle from the Company. [Dkt No. 15].

During the course of discovery, Wonderful has produced several "investigative" reports wherein its unlicensed "investigator" interviewed fifteen (15) individuals, the vast majority of whom are still Wonderful employees. The interviews were not recorded and the Plaintiff has no way of knowing or testing the veracity of Wonderful's investigative reports in the absence of an opportunity to depose these individuals under oath. Wonderful will surely call most of these individuals at trial, many of whom were identified on either Wonderful's Fed. R. Civ. P 26 Initial Disclosure, in discovery responses, and/or in documents produced in the course of this case.

In addition, Plaintiff wants to depose other individuals who were involved in commencing and conducting the investigation, the decision to terminate Mr. Jordan, individuals who were not interviewed by Wonderful who would vindicate Mr. Jordan, and the younger and less experienced individual who replaced Mr. Jordan.

As a result, the Plaintiff seeks leave to conduct a total of twenty-five (25) depositions.

**2.   Defendant's Statement**

There are no limitations on the number of people that a party can interview. By contrast, parties in a lawsuit are limited by the Federal Rules of Civil Procedure as to the number of

allowable depositions. This limitation is designed to encourage efficient litigation and encourages parties to make strategic decisions when selecting deponents.

Plaintiff's motion must be denied, because Plaintiff: (1) failed to properly meet and confer on this issue; 2) violated the "exhaustion rule" necessitating him to complete his ten allowable depositions before seeking more; 3) seeks depositions that are duplicative; and 4) seeks to depose the owner of the company, Stewart Resnick, who is an apex witness, and the information he purportedly has is not relevant to the issues in this case.  In regard to the latter, any information Mr. Resnick may provide can be and already has been obtained from lower-level individuals.

Plaintiff's tactic is clear – to intimidate and bully Defendant and waste Defendant's resources. As the investigation revealed, this is the same tactic Plaintiff used on his subordinates when he worked for Defendant.

**II.**

**<u>DETAILS OF MEET AND CONFER CONFERENCES</u>**

1.     <u>Plaintiff's Statement</u>

The issue of taking additional depositions was initially raised in person by Plaintiff's counsel, Mick Marderosian, at the deposition of a Fed. R Civ. P. 30(b)(6) witness on November 29, 2018. Wonderful's counsel, J.P Pecht, advised Mr. Marderosian to email a list of the proposed depositions that Plaintiff wanted to take and they would advise whether or not they had any objections. <u>See</u> Marderosian Decl., ¶ 2.

On December 3, 2018, Wonderful's counsel responded via email indicating that they were unable to determine, based on the list, who the first ten depositions would be and what the basis was for why Plaintiff felt he was entitled to the additional depositions. Plaintiff's counsel responded stating that most of the individuals on the list were individuals that Wonderful's investigator had interviewed and the others were relevant to Plaintiff's claim and Defendant's counterclaim. Plaintiff's counsel further advised that the "first ten" would depend on whether or not Plaintiff was permitted to take more than ten (10) depositions. Wonderful's counsel responded by stating that the explanation for wanting to take additional depositions was "anemic" and "overly general" and that based on that explanation, Wonderful would not agree to expand the ten

1  deposition limit. Wonderful's counsel also stated that they wanted to proceed under Rule 37

2  governing discovery disputes and not Judge Boone's "local" rules allowing for informal telephone

3  conferences. A copy of the email string reflecting the exchange between counsel is attached as

4  Exhibit "A" to the Declaration of Michael G. Marderosian submitted herewith.

5      On December 4, 2018, Counsel met and conferred further in person regarding this issue.

6  During that conference, the possibility of limiting the list of proposed depositions to 18 was

7  discussed. Wonderful's counsel requested Plaintiff submit a revised list of depositions for their

8  consideration. See Para 3 of the Declaration of Michael G. Marderosian submitted herewith.

9      On December 5, 2018, Wonderful's counsel rejected Plaintiff's request.  A copy of this

10  email exchange is attached as Exhibit "B" to the Declaration of Michael G. Marderosian submitted

11  herewith.

12  **2.**      **Defendant's Statement**

13      Plaintiff started the meet and confer process for taking 25 depositions after having

14  completed only *half* a deposition.  In disregard of the rules, Plaintiff has already noticed all of the

15  depositions at issue in this motion, despite well settled authority requiring him to first seek the

16  court's permission to notice more than ten depositions.  Plaintiff began the meet and confer

17  process in the middle of the very first deposition in this case. Bringing the motion so prematurely

18  has led to his inarticulate motion. Plaintiff seeks 25 depositions, but does not make clear which of

19  those are the 10 he is entitled to (and therefore does not need to move on) and which additional 15

20  he seeks to compel. This is just one of several problems with his motion.

21      The first deposition in this case, took place on November 29, 2018 ending at 4:17 p.m. that

22  day.  In the middle of the deposition at 12:15 p.m., Plaintiff sent an email indicating that he

23  intended to take 25 depositions and wanted to know if Defendant would object. (Declaration of

24  Michael Vasseghi ¶ 2 and Exhibit A thereto).  On December 3, 2018, Defendant asked Plaintiff to

25  explain the necessity for each additional deposition. *Id*.  The only explanation was that the

26  investigator had interviewed them so they should be deposed. *Id*.  The following day, before and

27  after the second deposition, the parties discussed further the number of depositions. At that time,

28  Defendant once again asked why each individual, beyond the ten deposition limit, was necessary.

Plaintiff again stated it was because of the number of people interviewed during the investigation. *Id*. at ¶ 3.  Defendant responded that he would think about the matter and get back to Plaintiff's counsel within the next two days. *Id*.  The following day, on December 5, 2018, Defendant responded to Plaintiff, in relevant part, as follows:

> Mick,
> We've considered your request for wanting to take more depositions than the 10 deposition limit. You first made this request after having only deposed a single individual – Tim Stehr. As such you are not in a position to know whether you can obtain the evidence you need for your case without first having completed your 10 depositions. As such, your request for more depositions at this juncture is premature.
>
> Second, it appears that the only reason your client wants to take so many depositions is to essentially mimic my client's investigation. Simply because my client interviewed many witnesses, does not translate into you needing to depose all those individuals. My client had no limit to the number of witnesses it could interview. By contrast you are limited by the rules. Also, it appears some of the witnesses you are seeking to depose have no pertinent information, or have information that can be obtained by the first 10 deponents. Of course at this time we can't be sure because you've only completed 2 depositions.
>
> If after completing your 10 depositions you can provide specific reasons for why you still need to depose additional individuals and why those individuals are essential to your case, we'd be happy to re-consider your request at that time.

*Id*. at ¶ 4 and Exhibit A thereto.

Instead of engaging in substantive dialogue explaining his position and articulating the particularized showing necessary, Plaintiff replied *two* minutes later:

> Michael,
> This is not acceptable and is completely unreasonable. We will initiate the process toward and [sic] order tomorrow. mick

*Id*.

As evidenced by the meet and confer record, despite repeated requests by Defendant for an explanation for why the excess depositions were necessary, the ***first time*** Plaintiff provided any explanation for why it needed to take each additional deposition, other than "because they were part of the investigation," came as part of this motion.  Plaintiff never met and conferred in good faith with the intention of resolving the matter. Case law makes clear that a party must make a "particularized showing" why each additional deposition beyond ten is necessary. Plaintiff failed

1    to do so prior to filing this motion. As such, the motion should be denied.

2                                                    **III.**

3                                **NATURE OF THE ACTION/FACTUAL DISPUTES**

4    1.       **Plaintiff's Statement**

5             a.       **Brief Factual Background**

6             Plaintiff has dedicated his entire adult life to farming and farm management, specializing in

7    citrus. He began working for Paramount Citrus Association, a prior iteration of Wonderful Citrus

8    Packing, LLC in 1991, and spent his entire career there overseeing thousands of acres of citrus crops

9    and ultimately becoming Wonderful's Senior Northern Farming Director. Despite the unfettered

10   commitment and stellar performance for Wonderful for approximately twenty-seven (27) years,

11   Wonderful, with no notice or explanation, advised James Jordan on November 3, 2017 that his

12   employment had been terminated. This was two days after notifying the entire company of his

13   termination. Adding insult to injury, executive and management level employees at Wonderful have

14   made direct and indirect statements to numerous individuals that Mr. Jordan engaged in criminal

15   activities and stole from the Company. These statements were done without having conducted a full

16   and fair investigation and without giving Mr. Jordan a meaningful opportunity to respond. These

17   statements and conclusions are categorically untrue, have ruined Mr. Jordan's reputation in the

18   industry, and made it impossible for him to find work.

19            Plaintiff's Complaint alleges causes of action for: (1) Violation of Age Discrimination in

20   Employment Act; (2) Violation of California Government Code § 12940- Age Discrimination; (3)

21   Wrongful Termination in Violation of Public Policy; (4) Breach of Express Oral Contract Not to

22   Terminate Employment without Good Cause; (5) Breach of Implied Contract of Continued

23   Employment Not to Terminate Without Good Cause; (6) Breach of Implied Covenant of Good Faith

24   and Fair Dealing; and (7) Defamation Per Se.[1]

25

26

27   ───────────────
     [1] Plaintiff's causes of action for Intentional Infliction of Emotional Distress and Negligent
28   Infliction of Emotional Distress were dismissed.

In response to Plaintiff's Complaint, Defendant Wonderful filed a Counterclaim in furtherance of its allegations that the Plaintiff somehow stole from the Company. Wonderful is alleging counterclaims for: (1) unjust enrichment; (2) conversion; (3) Fraud; and (4) Civil Conspiracy to Commit Conversion, Fraud, and Unjust Enrichment.[2]

**b.    Plaintiff Wants To Depose The Following Key Witnesses[3]**

Below is a brief summary of the witnesses Plaintiff seeks to depose:

1.    **Fed. R. Civ. P. 30(b)(6) witness** on the following topics: (1) The investigation reported in YOUR production of documents Bates Nos. WC 01512-01545; (2) The time cards and other records and DOCUMENTS that create the "substantial confirmation that Jordan has been using company employees for his personal benefit". (See YOUR production of documents Bates No. WC 01543); (3) The witness interviews that create the "substantial confirmation that Jordan has been using company employees for his personal benefit". (See YOUR production of documents Bates No. WC 01543); (4) The basis for YOUR termination of Plaintiff James K. Jordan. This deposition will have been completed as of the date of this hearing.

2.    **Victor Loera-** Victor Loera was interviewed multiple times by Wonderful during the course of the alleged investigation in this case. Wonderful and its agent, Tim Stehr, identified Mr. Loera as "Informant 1" in various "investigative reports" that were authored by Mr. Stehr and Mr. Goldman. According to Wonderful's "investigative reports", Mr. Loera had information that employees, including Jordan, were stealing millions of dollars a year from Wonderful and explained how he believed this was occurring (*i.e* by changing time cards to reflect that work was being done on Wonderful's property instead of Jordan, changing the status of trees, and Jordan's scheme with Marroquin to bill Wonderful for people who were never there). Mr. Loera

---

[2]  The viability of Defendant/Counterclaimant's counterclaim for Civil Conspiracy is currently being considered by Judge Ishii.

[3] By the date of this hearing, Plaintiff will have completed the depositions of Witnesses 1-5 above.

was identified as a witness in response to interrogatories. This deposition will have been completed as of the date of this hearing.

3. **Jim Hatakeda**- Jim Hatakeda was interviewed at least twice by Wonderful during the course of the alleged investigation. He was a farm manager who worked under James Jordan. According to Wonderful's investigative report, Mr. Hatakeda was responsible for numerous ranches including those owned by James Jordan. Mr. Hatakeda initially denied changing time cards but then admitted that under James Jordan's direction he changed time cards regularly so that James Jordan would not have to pay the bill and instead Wonderful would pay it. He claims this occurred 25-30 times. Mr. Hatekeda claims Mr. Marroquin's people would work at James Jordan's property and bill the time to Wonderful Citrus and that Mr. Jordan used inappropriate language. According to Wonderful's report, Mr. Hatekeda claims that Mr. Jordan was stealing and embezzling. Mr. Hatakeda was identified as a witness on Wonderful's Fed. R. Civ. P 26 Disclosure and in response to interrogatories. This deposition will have been completed as of the date of this hearing.

4. **Tom Goldman**- Tom Goldman oversaw the investigation of Mr. Jordan which allegedly led to Mr. Jordan's termination and which serves as the basis for Wonderful's Counterclaim. He "appointed" Tim Stehr, who was not a licensed investigator, to interview employees and vendors about James Jordan. Mr. Goldman co-authored the "investigative" report that allegedly sets forth evidence which supposedly justified Mr. Jordan's termination. Mr. Goldman was present during most of the interviews with Wonderful employees. Mr. Jordan threatened James Jordan with criminal charges. Mr. Goldman was identified as a witness in response to interrogatories. This deposition will have been completed as of the date of this hearing.

5. **Ignacio Gonzalez**- Mr. Gonzalez was interviewed multiple times by Wonderful during the course of the alleged investigation in this case. Mr. Gonzalez was identified as "Informant 2" in the investigative report and according to Wonderful, Mr. Gonzalez was aware of the fraudulent billing that was going on and felt that his time cards were

being changed and reduced to reflect less time worked on James Jordan's farms and shifting it to Wonderful's farms. Mr. Gonzalez claims all of the supervisors that work for Mr. Jordan change timecards and alter paperwork. He also claims to know that Mr. Jordan and Mr. Marroquin were working together to under-charge Mr. Jordan and overcharge Wonderful. Mr. Gonzalez also made numerous other allegations which Wonderful relied on to conclude Mr. Jordan was stealing from the Company despite the fact that such allegations are demonstrably false. Mr. Gonzalez claims he was threatened by Mr. Jordan. Mr. Gonzalez was identified in response to interrogatories. This deposition will have been completed as of the date of this hearing.

6. **Todd Consolacio**- Mr. Consolacio was interviewed by Wonderful twice during the course of the alleged investigation in this case. According to Wonderful, Mr. Consolacio initially denied changing time cards and then agreed to do it after James Jordan told him to do so. The changes were done so that the budgets equal out and match the forecast. Mr. Consolacio denied changing any time cards to lessen the amount Mr. Jordan was charged but had heard it was occurring. Mr. Consolacio was identified as a witness on Wonderful's Fed. R. Civ. P. 26 Disclosure. Mr. Consolascio was identified as a witness in response to interrogatories as a witness having knowledge of allegations set forth in Wonderful's counterclaim.

7. **Craig Cooper**- Mr. Cooper is the Senior Vice President of Wonderful Companies and Chief Legal Officer of Roll Legal. Mr. Cooper was identified as a witness on Wonderful's Fed. R. Civ. P 26 Disclosure and was identified in discovery responses as a witness having knowledge of allegations set forth in Wonderful's counterclaim. Both before and after Mr. Jordan's termination, Craig Cooper has made numerous statements to third parties that Mr. Jordan was involved in criminal activities, that he changed time cards and was stealing from the company. These statements were false and have damaged Mr. Jordan in his profession and in his community.

8. **David Krause**- Mr. Krause is the President of Wonderful Citrus. He was presented for deposition by the Defendant as the Fed. R. Civ. P 30(b)(6) witness regarding Plaintiff's

9

termination. Plaintiff also deposed him individually on the same date. On information and belief, Mr. Krause, and his wife Lisa, were the driving forces behind the investigation. Mr. Krause sent Gus Marroquin a letter quoting parts of the contract between Marioquin's company and Wonderful and how Wonderful has the right to look at Marroquin's records, though to Plaintiff's knowledge, this was never done. Mr. Krause directed Danny Garcia to issue emails pertaining to Mr. Jordan's termination and unlawful activity at Wonderful. Mr. Krause was identified as a witness on Wonderful's Fed. R. Civ. P 26 Disclosure. Mr. Krause was also identified in response to discovery as a witness having knowledge of allegations set forth in Wonderful's counterclaim. This deposition will have been completed as of the date of this hearing.

9.    **Gus Marroquin**- Wonderful interviewed Mr. Marroquin at the start of its investigation. Mr. Marroquin owns and operates a company called Mid-Cal Farm Labor which provides people to work in the citrus fields for Wonderful Citrus. His workers do pruning, planting, and irrigation. Wonderful contends that Mr. Jordan and Mr. Marroquin conspired together to steal from Wonderful. According to Wonderful, Mr. Jordan and Mr. Marroquin would arrange for workers to work on Mr. Jordan's fields and submit a bill to Wonderful showing that the work was done on Wonderful's farms instead of Mr. Jordan. This meant Wonderful was paying for work that was actually done on Jordan's properties. Mr. Marroquin and Wonderful still do business together.

10.   **Adam Brown**- Mr. Brown was named as Mr. Jordan's replacement on the date that Wonderful announced to the company that Mr. Jordan had been fired. Mr. Brown is younger and less experienced than Mr. Jordan. This witness goes directly to Mr. Jordan's age discrimination claim. Mr. Brown also witnessed Mr. Jordan being put on administrative leave.

11.   **Lisa Krause**- Mrs. Krause is the wife of Wonderful's president, David Krause. Based on Wonderful's investigative report and the deposition testimony of Victor Loera, Mrs. Krause believed that Mr. Jordan was stealing from the company and that is how he

paid for his house at Shaver Lake. Mrs. Krause and Mr. Loera were actively communicating about Mr. Jordan and it is believed that Mrs. Krause instigated this investigation to get Mr. Jordan fired.  Deposition testimony obtained to date has confirmed that Mrs. Krause was directly involved in the investigation and communicated with David Krause about her opinions regarding James Jordan.

12. **Danny Garcia**- Mr. Garcia is the head of HR for Wonderful in Delano. Mr. Garcia advised Mr. Jordan he was being put on administrative leave because there was an ongoing investigation. Mr. Garcia also indicated that Mr. Jordan was impeding the investigation and creating a hospital work environment. Mr. Garcia is the author of the two emails[4] that were sent to the entire company regarding James Jordan's termination (before Mr. Jordan was even notified) and sent them out on behalf of David Krause.

13. **Alice Delgado**- Ms. Delgado was interviewed by Wonderful twice during the course of the alleged investigation in this case. According to Wonderful, Alice Delgado works in HR and denies knowing anything about wrongdoing or theft. Ms. Delgado claims that it was "common knowledge" that Mr. Jordan had used "bad" language and she had supposedly received complaints about this language and was put "on notice" about it. To date no records have been produced supporting these statements.

14. **Austin Williams**- Mr. Williams was interviewed by Wonderful during the course of the alleged investigation in this case. According to Wonderful, Austin acknowledged Mr. Jordan using foul language but did not admit to changing time cards. He supposedly became "Extremely defensive" and "nervous." Wonderful claims that Mr. Williams had a close personal relationship with Mr. Jordan, presumably to mitigate the fact that Mr. Williams did not support Wonderful's case. On information and belief, Mr. Williams will testify that Wonderful threatened him and others during the interviews. Mr. Williams will talk about how he was fired because he was not

---

[4] The first email was sent out notifying Wonderful that James Jordan was no longer with the Company. The second email sent out shortly thereafter insinuating Mr. Jordan was a thief and had stolen from the company.

"cooperating in the investigation." He will talk about being interrogated for three hours, being accused of being a liar, and the other tactics Wonderful employed during their "investigation."

15. **Nick Theis**- Mr. Theis was interviewed by Wonderful twice during the course of the alleged investigation in this case. According to Wonderful, Nick Theis had no knowledge of any wrongdoing at Wonderful and denied knowing anything about changing time cards. During his second interview, Mr. Theis also acknowledged that he has changed time cards for budgetary reasons and had never intentionally moved billing so one farm was billed less than another. He did move things around to be more equitable. He told Wonderful that this is how he was taught to "maintain the budget". On information and belief, Mr. Theis will also discuss Wonderful's interview tactics and how he has heard in the community that James Jordan was fired for stealing.

16. **Rene Flores**- Mr. Flores was interviewed by Wonderful multiple times during the course of the alleged investigation in this case. According to Wonderful, Rene Flores was a pest control advisor who was supposedly aware that there was a lot of fraudulent billing going on so that James Jordan was not billed for work done on his farm. Mr. Flores also received a threatening text message during the investigation that advised him that if he knew what was good for him, he would cooperate with Wonderful. Mr. Flores also claims that Mr. Jordan used inappropriate language. Mr. Flores claims he was threatened by James Jordan.

17. **Emmett Dietz**- Mr. Dietz was interviewed twice by Wonderful during the course of the alleged investigation in this case. It is anticipated Mr. Dietz will testify that Wonderful threatened his job prior to his interview and that he felt so much pressure, he physically passed out. According to Wonderful, Mr. Dietz acknowledged correcting time cards for budgetary reasons. Mr. Dietz was identified as a witness in response to interrogatories as a witness having knowledge of allegations set forth in Wonderful's counterclaim. Mr. Dietz will also discuss Wonderful's interview tactics.

18. **Jose Lima**- Mr. Lima was interviewed twice by Wonderful during the course of the alleged investigation in this case. According to Wonderful, Mr. Lima was in charge of the nursery. There are allegations against Mr. Jordan that he received trees he did not pay for. Mr. Lima said he knows whenever trees are moved and there are systems in place to make sure that the trees are properly charged to the farms they are sent to. He also says that James Jordan was billed directly. On information and belief, Mr. Lima will also discuss his interactions with Mr. Jordan and Wonderful's investigation tactics as well as statements made about Mr. Jordan. Mr. Lima was identified as a witness on Wonderful's Fed. R. Civ. P 26 Disclosure.

19. **Kevin Adams**- Wonderful's investigators asked Mr. Adams to analyze the records and allegations by Mr. Gonzalez and determine if the records supported Mr. Gonzalez's accusations. In that Wonderful is relying on Mr. Adams' analysis to conclude that Mr. Jordan stole from the company, Mr. Jordan should be permitted to inquire as to Mr. Adams' background, training, and experience, what he did, how he did it, what he didn't do, etc., to test the veracity of his conclusions.

20. **Arnold Viduya**- Mr. Viduya was identified as a witness by Wonderful in response to interrogatories as a witness having knowledge of allegations set forth in Wonderful's counterclaim and works in Wonderful's accounting department. He would have direct knowledge as it pertains to what Mr. Jordan was billed for in terms of the services and goods provided by Wonderful. He would be able to testify as to whether Mr. Jordan paid for services and goods that Wonderful is claiming were not paid for.

21. **Linda Welch**- Ms. Welch was identified as a witness by Wonderful in response to interrogatories as a witness having knowledge of allegations set forth in Wonderful's counterclaim and works in Wonderful's accounting department. It is anticipated that Ms. Welch will testify about how often supervisors changed time cards and how easy it is to miscode a time card because Wonderful's system is complex. In addition, Ms. Welch handled all farming cost reporting and knew the detail of what was billed to Mr. Jordan.

22. **Virginia Zambrano**- Ms. Zambrano was interviewed by Wonderful during the course of the alleged investigation in this case. Ms. Zambrano was Mr. Jordan's administrative assistant. According to Wonderful, Ms. Zambrano deals with time cards from Gus Marroquin and she has never seen any problems with the time cards. She said that Mr. Jordan has used inappropriate language in her presence. James Jordan told Ms. Zambrano to tell the truth when she was interviewed.

23. **Doug Carmen**- Mr. Carmen was Mr. Jordan's boss. He would able to testify as to Mr. Jordan's work as well as practices in the company such as changing time cards. Mr. Carmen can also testify as to the authority he gave to Mr. Jordan as it pertains to Mr. Jordan purchasing particular items from Wonderful. Additionally, on information and belief, Wonderful believes Mr. Carmen and Mr. Jordan were conspiring together to steal from the Company. Mr. Carmen also believed that someone at Wonderful was trying to get Mr. Jordan fired, that the investigation was being handled improperly and that the questions asked were completely inappropriate.

24. **Dan Spaulding**- Mr. Spaulding is a former Wonderful employee who was interviewed by the Company during its investigation of James Jordan. Wonderful was told by Victor Loera that Mr. Spalding left the company because of the way employees were stealing money. Dan Spauling allegedly told Wonderful's investigator that he hoped the investigator is able "to find out the truth about what is going on there." Mr. Spaulding also claims he did not want to be involved because he felt there was a threat to his family.

25. **Stewart Resnick**- Mr. Resnick's deposition will deal with the following issues: (1) his knowledge and involvement in initiating and conducting the investigation; (2) his communications with David Krause pertaining to his desire to pursue criminal charges against Mr. Jordan; (3) the reason and basis why Mr. Resnick wanted to pursue criminal charges against Mr. Jordan; (4) Mr. Resnick's approval of Mr. Jordan's termination; and (5) Mr. Resnick's involvement and approval of the two emails sent out to Wonderful's employees pertaining to Mr. Jordan's termination.  During the

deposition of Mr. Krause, he confirmed that Mr. Resnick was directly involved in and made the decision to fire Mr. Resnick.  While Defendant argues that Mr. Resnick is an "appex" employee and should not be the subject of a deposition, such depositions are permitted where the individual has "direct personal factual information pertaining to material issues in the action and the information to be gained in not available through other sources.  *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979); *Coleman v. Schwarzenegger*, 2008 U.S. Dist. LEXIS 70224, 2008 WL 4300437, at *2 (E.D. Cal. 2008).  Mr. Resnick meets this standard in that Mr. Krause's deposition testimony unequivocally confirms Mr. Resnick's involvement.

2. **Defendant's Statement**

This suit involves only two parties and the facts of this case are not complicated: Defendant asserts Plaintiff was terminated for cause, while Plaintiff contends he was terminated because of his age.  Plaintiff also asserts that subsequent to his termination, he was defamed. Defendant has counter-claimed against Plaintiff for embezzlement. Defendant undertook an investigation to determine whether there was any truth to the rumors that Plaintiff was stealing from the company and was mistreating employees. Once Defendant obtained evidence to confirm some of the rumors, it had no choice but to fire him. This investigation involved investigators interviewing fourteen individuals including Plaintiff. Now Plaintiff seeks to depose all but one of those individuals in addition to a host of others.

The reason Plaintiff wants 25 depositions is because he did not think strategically about which depositions he needs. For example he wasted 20% of his deposition limit on deposing two investigators. Neither of these depositions was necessary, and combined they were redundant. Plaintiff sought to depose and has deposed both "informants" who led to the investigation being initiated. Again, Plaintiff only needed one, but chose to depose both of them.

//

//

//

IV.

**PLAINTIFF'S CONTENTIONS**

A.    **LEGAL STANDARD FOR EXCEEDING THE PRESUMPTIVE LIMIT OF 10 DEPOSITIONS**

Federal Rule of Civil Procedure 30(a)(2)(A) presumptively limits a party to ten depositions. See also *Archer Daniels Midland Co., v. Aon Risk Servs., Inc. of Minnesota*, 187 F. R. D. 578, 586 (D. Minn. 1999). A party may only exceed this number with leave of court or by stipulation of the parties. Fed. R. Civ. P. 30(a)(2). Fed. R. Civ. P. 30 does not state what showing is required for a Court to grant additional depositions, and instead provides that the Court "must grant leave to the extent consistent with Rule 26(b)(1) and (2)." *Pitkin v. Corizon Health Inc.,* 2018 U.S. Dist. Lexis 42471, at *5-6 (OR March 13, 2018)[Rejecting the "particularized showing" standard as overly burdensome].[5]

Rule 26 provides that additional discovery should be allowed unless the Court determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the moving party has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, in light of the factors listed in the Rule. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

In interpreting these discovery rules, the Supreme Court has long held that they should be entitled to "broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Courts routinely have expanded deposition limits where they have determined that the concerns underlying Rule 26(b)(2)(C) are not implicated. See, *e.g.*, *Alexander v. FBI*, 192 F.R.D. 20 (D.D.C. 2000); *Strode v. City of Venice*, 2007 WL 1595559 (S.D.Ill. 2007); *Mitchell v. Nat'l R.R. Passenger Corp.* 208 F.R.D. 455 (D.D.C. 2002).

While some Courts are reluctant to grant a motion for additional depositions prior to the moving party exhausting the ten depositions which are permitted as a matter of right, other Courts do not apply or adopt the exhaustion rule at all and have even departed from this "Exhaustion rule" where there is good cause or where the complexity of the case clearly warranted more than ten depositions.

---

[5] Some Courts have adopted the Particularized Showing test and as such, Plaintiff has provided sufficient information to meet that burden.

1  *Aerojet Rocketdyne, Inc., v. Global Aero., Inc.,* 2018 U.S. Dist. Lexis 190035, at * 8 (E.D. CA Nov. 6,

2  2018)[6]; *City of Lincoln v. United States*, 2018 U.S. Dist. Lexis 139251, at * 7 (E.D. CA Aug. 16,

3  2018)[**"The Federal Rules of Civil Procedure do not require parties to exhaust the allowed**

4  **depositions before seeking leave for more."**]; *Couch v. Wan*, 1:08-cv-1621-LJO DLB, 2011 U.S.

5  Dist. Lexis 110342, at * 1 (E.D. CA Sept. 27, 2011); *Del Campo v. Am. Corrective Counseling Servs.*,

6  2007 U.S. Dist. Lexis 87150 (N.D. CA Nov. 6, 2007).

7       Because the Plaintiff's request for additional depositions falls squarely within the

8  boundaries of Rule 26, the motion should be granted.

9  **B.     THE DEPOSITIONS SOUGHT BY PLAINTIFF ARE NOT UNREASONABLY**
   **CUMULATIVE OR DUPLICATIVE**

10

11       The depositions the Plaintiff seeks are not "unreasonably cumulative or duplicative." Fed.

12  R. Civ. P. 26(b)(2). This case raises complicated factual issues that would require substantial

13  discovery. Plaintiff moves for leave to exceed the discovery limits by only the number of

14  depositions necessary to gather sufficient evidence to prove his claims and defenses.

15       The anticipated testimony of the witnesses Plaintiff wants to depose are set forth above.

16  The testimony is not cumulative or duplicative and allowing these extra depositions is fair,

17  necessary, and appropriate due to the investigation undertaken by Wonderful and the potential

18  witnesses that have been identified by Wonderful in its Rule 26 Disclosure and in response to

19  discovery and/or discovered during the course of discovery and depositions taken thus far in this

20  case.

21       Even if the Court grants this motion and allows Plaintiff to depose the individuals

22  identified above, the Plaintiff will be unable to conduct depositions of other individuals who may

23

24  [6] Notably, the Plaintiff in the *Aerojet* case made a similar argument to the one asserted by the
    Defendant in this case- *i.e* that it would be premature at this juncture to expand the number of

25  depositions based on the number of depositions taken to date. The *Aerojet* Court firmly rejected
    this position finding that "there is no reason to conclude that if the need for additional depositions

26  is clear from the outset that the court must engage in arbitrary delay before entertaining a motion
    for depositions in excess of the presumptive 10." The *Aerojet* Court noted that the need for certain

27  additional depositions was clear and there is no indication that delay will alter the outcome of the

28  motion.  *Aerojet*, supra at *8-9.

be knowledgeable regarding Plaintiff's claims and Wonderful's counterclaim. Given the nature of this case, the Plaintiff's request to take 15 extra fact depositions is neither unreasonably cumulative nor duplicative.

## C.  THERE IS NO OTHER MEANS AVAILABLE TO PLAINTIFF TO OBTAIN THIS CRITICAL EVIDENCE

Rule 26 protects against depositions sought in bad faith or in an effort to abuse the discovery process or harass a party. See *e.g.*, *Vica Coal Co., Inc. v. Crosby*, 212 F.R.D. 498, 504 (S.D.W.VA 2003); *Strode v. City of Venice*, 2007 WL 1595559, *1 (S.D. IL June 1, 2007).

Typically, courts have applied Rule 26(b)(2)(C)(ii) when parties have been dilatory or negligent about seeking timely discovery (see, *e.g.*, *Mallas v. United States*, 54 F.3d 773 (4th Cir. 1995)), or when they have sought to circumvent discovery limits by serving new requests at or after the applicable deadline. See, *e.g.*, *Martin v. Armstrong World Indus., Inc.*, 2007 WL 758073, *2 (D. NJ Mar. 8, 2007); *Bamberg v. Lernout*, 225 F.R.D. 64, 65-66 (D. Mass. 2004); *Berry v. Rite Aid Corp.*, 2001 WL 527815, *1 (E.D. PA May 16, 2001).

No such abuse is present here.

Plaintiff needs a full and fair opportunity under the Federal Rules of Civil Procedure to gather the facts and testimony necessary to prove the elements of his claims and to refute the Defendant's counterclaim. This is not a case where the Plaintiff already has had "ample opportunity to obtain the information by discovery in the action" and is needlessly seeking more. Fed. R. Civ. P. 26(b)(2)(C)(ii).

Plaintiff has no other meaningful way to obtain the information necessary to create a fully developed evidentiary record. The vast majority of witnesses Plaintiff seeks to depose are Wonderful or former employees of Wonderful, making it highly unlikely that they will talk with Plaintiff, and it is potentially unethical under Rule 2-100 of the California Rules of Professional Conduct for Plaintiff's counsel to contact them or their attorneys without compulsory process.

In weighing the burden and expense of the requested depositions against their benefit, it is clear that the extra depositions are warranted. Fed. R. Civ. P. 26(b)(2).

//

**D.** **PLAINTIFF HAD NEVER SEEN DEFENDANT'S INVESTIGATIVE REPORTS AT THE TIME OF THE JOINT SCHEDULING CONFERENCE AND THEREFORE COULD NOT HAVE RAISED THE ISSUE BEFORE ENTRY OF THE SCHEDULING ORDER**

At the time Plaintiff submitted the Joint Scheduling Conference Statement, Plaintiff had no knowledge or idea as to what was in Wonderful's investigative report. Had Plaintiff known what was contained therein, Plaintiff would have raised the issue with the Court at that time.

Furthermore, while it is the Defendant's contention that Wonderful's investigative reports should be sufficient, the bottom line is that the Plaintiff is not obligated to trust Wonderful's representations in the reports and furthermore, the deposition testimony that has been obtained to date completely undermines the validity and veracity of those reports which have proven to be grossly inaccurate and misleading.

## DEFENDANT'S CONTENTIONS

**A.** **Plaintiff's Motion Violates The Exhaustion Rule**

"Generally, courts will not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right under Rule 30(a)(2)." *Couch v. Wan*, 2011 WL 4499976, at *1 (E.D. Cal. Sept. 27, 2011); *Authentec, Inc. v. Atura Tech.*, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008). The only time courts depart from the "exhaustion rule" is "if the complexity of the case clearly warranted more than ten depositions." *Aerojet Rocketydyne Inc. v. Global Aerospace, Inc.,* 2018 WL 5993585, at *1 (E.D. Cal. Nov. 6, 2018). Cases are complex if they are multi-party cases or involve complex legal issues. *See, e.g., Del Campo v. American Corrective Counseling Servs., Inc.,* 2007 WL 3306496, at *5 (N.D. Cal. Nov. 6, 2007) (complex class action dispute involving five plaintiffs and eleven defendants which spanned a twenty year time period). *See also Manual for Complex Litigation*, Fourth (2004)(citing antitrust, securities, intellectual property, CERCLA, Civil RICO and employment discrimination in class action settings as being complex) "Individual actions alleging employment discrimination are generally not factually complex." *Id*. at 561.

In *Couch v. Wan*, *supra*, the "exhaustion rule" was excused because the case involved "multiple plaintiffs, multiple defendants and complex legal issues." *Id*. at *1. Additionally, the

complaint in *Couch* contained allegations of multiple retaliatory acts, threats, harassment and intimidation and the RICO claims spanned multiple events and multiple individuals. *Id*. at *2

Plaintiff cites to *City of Lincoln v. United States*, 2018 WL 3917711 (E.D. Cal. Aug. 16, 2018) for the proposition that "the Federal Rules of Civil Procedure do not require parties to exhaust the allowed allotted depositions before seeking leave for more." However, Plaintiff entirely omits the second reason – the case was considered "complex." *Id*. at *7.

> The City has sued three federal defendants for liability under CERCLA, which has been aptly called an inherently 'complex statute with a maze-like structure and baffling language.' The relevant events took place over fifty years ago, and key witnesses are likely now either in poor-health or deceased; if still living they are located throughout the United States. The nature of the litigation justifies departing from the exhaustion rule.
>
> *Id*.

Finally, *Aerojet Rocketydyne* involved an insurance coverage dispute involving multiple defendants. *Id*. at *1. The case stemmed from two separate accidents. *Id*. The 41 page complaint in that case alleged "hundreds of millions of dollars" in damages. *Id*. Despite this complexity the court only allowed seven additional depositions. *Id*. at *5.

In every case where the court has departed from the exhaustion rule the case was considered complex, or involved multiple plaintiffs or defendants or both. By contrast, this case involves a *single* plaintiff and s*ingle* defendant. It does not involve any complex issues or area law. There is no reason why Plaintiff should be excused from the exhaustion rule.

Discovery does not close until March 29, 2019 in this case. Plaintiff should have completed the ten depositions he is entitled to, and then, if he believed he needed more depositions, he could have sought relief. As mentioned in Defendant's meet and confer letter. Plaintiff's motion is not ripe for consideration.

**B.      Plaintiff Failed To Provide a Particularized Showing During The Meet and Confer Process**

Plaintiff's motion should also be denied for failing to make a particularized showing during the meet and confer. A moving party seeking to take more than ten depositions must make

1  a "particularized showing" that additional depositions are necessary. *C&C Jewelry Mfg., Inc. v.*

2  *West*, No. C09-01303, 2011 WL 767839, *1. (N.D. Cal. Feb. 28, 2011); *accord, Bladeroom Grp.*

3  *Ltd. v. Facebook, Inc.*, No. 5:15-cv-01370, 2017 WL 8948736, at *1 (N.D. Cal. June 12, 2017)

4  (denying motion for additional depositions solely due to failure to make particularized showing

5  why they are necessary). During the meet and confer process, Plaintiff merely listed deponents

6  without explaining why they were necessary. (Vasseghi Decl. ¶¶ 2-4 and Exh. A). That is

7  insufficient and does not meet the requirement of a particularized showing.

8  **C.      Plaintiff's Explanation For Why He Needs To Depose 15 More Individuals Than**

9  **Allowed By the Rules Undermines His Position**

10       Defendant does not deny that many of the deponents Plaintiff wants to depose have some

11  relevant information. Some are even necessary to the case and were identified in Defendant's

12  initial disclosures. What makes Jordan's motion difficult to decide is that he lists all 25

13  depositions instead of the 15 additional ones he needs. That is why it is unclear which are the 15

14  and which fall into the first 10.[7]  But Plaintiff must do more than merely identify witnesses with

15  potentially relevant information if he wants to exceed the 10 deposition limit.  The legal standard

16  requires Plaintiffs to explain why the depositions of these additional witnesses would not be

17  cumulative or duplicative, why the information could not have been otherwise obtained from

18  another witness or through a different discovery method, and why the depositions are permissible

19  under Rule 26(b)(1). *See Bladeroom Grp. Ltd., supra* at *2.  This explanation is missing.

20       Rule 30(a)(2)(A) limits each party to a total of ten depositions. Rule 26(b)(2) instructs

21  courts to limit discovery when:

22       (1)      the additional discovery would be unreasonably cumulative or duplicative or could

23             be better obtained from another source;

24       (2)      the party seeking additional discovery has had ample opportunity to obtain

25

26  _____

27  [7] To date the following depositions have taken place: 30(b)(6) wherein 3 separate individuals had to be designated to cover the topics Jordan sought; Tim Stehr (one of the investigators); Jim Hatakeda, Ignacio Gonzales, Tom Goldman (the second investigator) and David Krause – the

28  president of Wonderful Citrus.

1    information through discovery in the action; or

2    (3)    the burden or expense of the proposed additional discovery outweighs its likely

3    benefit, considering the needs of the case, the amount in controversy, the parties'

4    resources, the importance of the issues at stake, and the importance of discovery in

5    resolving the issues. Fed. R. Civ. P. 26(b)(2).

6    **D.     Jordan Has The Information for Eleven of the Witnesses He Seeks to Depose From**

7    **the Investigation Report That Defendant Has Produced**

8    Eleven of individuals Plaintiff seeks to depose were interviewed as part of the investigation

9    that led to a finding that he had created a hostile work environment and stolen from Defendant.

10   Had Defendant kept the content of those interviews confidential, Plaintiff might have grounds for

11   seeking to depose those individuals. However, Defendant has produced the investigation report, in

12   its entirety, which contains the very information Plaintiff seeks from each of those individuals.

13   (Victor Loera, Jim Hatakeda, Ignacio Gonzalez, Todd Consolacio, Gus Marroquin, Austin

14   Williams, Nick Theis, Rene Flores, Emmet Dietz, Jose Lima, and Virginia Zambrano). (Vasseghi

15   Decl. ¶ 7).

16   Rule 30 (a)(2)(A) limits depositions to only ten when the information can be obtained

17   "from another source." Defendant has provided that other source. There is no reason why Plaintiff

18   needs to depose these individuals, as he already has the information he needs from them.

19   **E.     The Depositions Plaintiff Seeks Are Duplicative, Unnecessary and Violate The Apex**

20   **Rule**

21   Most of the deponents Plaintiff wants to depose offer duplicative information. A careful

22   review of the explanations for why these witnesses need to be deposed establishes that Plaintiff

23   wants to depose eight individuals on the issue of changed time cards (Victor Loera, Jim Hatakeda,

24   Ignacio Gonzales, Todd Consolacio, Austin Williams, Nick Theis, Emmet Dietz, Virginia

25   Zambrano). These witnesses will be providing overlapping testimony and are duplicative.

26   Next Plaintiff wants to depose every person in the accounting and finance department who

27   handled Plaintiff's account for his managed farms. (Kevin Adams, Arnold Viduya and Linda

28   Welch). These individuals will provide substantially the same testimony – how the accounting

1   process for billing Plaintiff's farm work and whether it was done correctly.

2        Plaintiff also wants to depose Adam Brown, his successor, because he "is younger and has

3   less experience." Plaintiff can obtain information about Brown's experience from an interrogatory

4   or document request. There is no need for his deposition.

5        In this District, it appears that the bar for exceeding the 10 deposition limit is even higher.

6   Not only must there be a "particularized showing" but the moving party must show that the

7   "information is crucial to the preparation of the case." *Aerojet Rocketydne, supra* at *3.  Plaintiff

8   does not come close to meeting this standard.

9        Finally, Plaintiff wants to depose Stewart Resnick, the owner of Defendant. The deposition

10  of a high-level official or executive, often referred to as an "apex" deposition, may be precluded

11  by the Court under Rule 26(c) where the discovery sought "can be obtained from some other

12  source that is more convenient, less burdensome, or less expensive."  *Apple Inc. v. Samsung*

13  *Electronics Co., Ltd.,* 282 F.R.D. 259, 263 (N.D. Cal. 2012).  "[C]ourts have observed that such

14  discovery creates a tremendous potential for abuse or harassment." *Estate of Levingston v. Cty. of*

15  *Kern*, 320 F.R.D. 520, 525 (E.D. Cal. 2017).  "Therefore, to safeguard against abuse, harassment,

16  and undue burden, the court should consider whether and how the party seeking the deposition has

17  attempted to use other less intrusive discovery methods, in addition to whether the deponent

18  possesses unique, firsthand knowledge regarding the facts at issue in this case." *Id*. at 525-26

19  (internal quotes and citations omitted).

20       None of the topics Plaintiff wants to depose Mr. Resnick on are irrelevant to this case.

21  Whether or not Mr. Resnick had knowledge or involvement in the investigation or termination of

22  Plaintiff has no bearing on the issues germane to the case.  Similarly, the reasons why Mr. Resnick

23  had a desire to pursue criminal charges against Plaintiff is also irrelevant and has no bearing on the

24  "facts at issue in this case."  Moreover, Plaintiff already deposed the President of Wonderful

25  Citrus, David Krause, who testified about Mr. Resnick's knowledge on several of these issues.

26  (Vasseghi Decl. ¶ 6).  This is the perfect example of why Plaintiff's motion is premature (and now

27  moot).  He did not know when he filed his motion, that he would obtain some of the information

28  he wanted from Mr. Resnick, from a less intrusive source, Mr. Krause.

1   Plaintiff has provided no valid explanation for wanting to depose Mr. Resnick.  Finally,

2   Plaintiff makes no offer of proof that Mr. Resnick has unique, first-hand knowledge of anything

3   related to this case.  Plaintiff's attempt to depose Mr. Resnick is merely for purposes of

4   harassment.

5   **VI.**

6   **<u>CONCLUSION</u>**

7   **1.      <u>Plaintiff's Statement</u>**

8   Plaintiff and Counter Defendant James Jordan respectfully requests that, due to the breadth and

9   complexity of this litigation and based on the foregoing particularized showing of need, leave to take

10  15 additional depositions (totaling 25) is warranted.

11  **2.      <u>Defendant's Statement</u>**

12  Plaintiff has failed every step of the way to satisfy the requirements for his motion.  He

13  jumped the gun and asked for 25 depositions after completing just half of one deposition, in

14  violation of the exhaustion rule.  He failed to meet and confer properly to provide a particularity

15  necessary for why each deposition is necessary. And when Plaintiff finally did provide an

16  explanation for why he needs 25 depositions, it became clear that 1) he already has and can obtain

    the information from elsewhere; 2) that half of the deponents will testify to the same issue, and 3)

17  he wants to depose Mr. Resnick purely as a mechanism to harass.  Plaintiff's motion should be

18  denied.

19

20  Dated: December 28, 2018                    MARDEROSIAN & COHEN

21

22                                                        By: */s/ Michael G. Marderosian*
                                                          Michael G. Marderosian,

23                                                        Attorneys for Plaintiff
                                                          JAMES K. JORDAN

24

25

26

27

28

1 DATED: January 2, 2019                    ROLL LAW GROUP PC

2

3                                                    By:      /s/Michael Vasseghi

4                                                          Michael M. Vasseghi
                                                         Attorneys for Defendant
5                                                         Wonderful Citrus Packing LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I hereby certify that on January 2, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM-ECF system which will send notification of such filing to all parties represented by counsel who are registered with the CM/ECF system.


DATED this 2nd day of January, 2019, in Fresno, California


By:/s/ Heather S. Cohen