# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES K. JORDAN,<br><br>        Plaintiff,<br><br>    v.<br><br>WONDERFUL CITRUS PACKING LLC,<br><br>        Defendant. | Case No. 1:18-cv-00401-AWI-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO ALLOW ADDITIONAL DEPOSITIONS<br><br>(ECF Nos. 29, 31) |

## I.

## BACKGROUND

James K. Jordan ("Plaintiff") worked for Wonderful Citrus Packing LLC ("Defendant" or "Wonderful") in various capacities for twenty-seven years. On November 2, 2017, Plaintiff's employment was terminated. Plaintiff contends that the company made up allegations that he was involved in criminal activity, changed time cards, and was stealing from the company to cover up the fact that he was discharged because of his age.

On March 23, 2018, Plaintiff filed this action against Defendant alleging violation of the Age Discrimination in Employment Act ("ADEA"), Title 29, United States Code, §§ 621-634. (ECF No. 1.) Defendants filed a motion to dismiss that was granted on May 15, 2018; and Plaintiff's state law infliction of emotional distress claims were dismissed. (ECF Nos. 6, 11.) On May 29, 2018, Defendant filed an answer and a counterclaim alleging state law causes of

action related to the allegations of theft and fraud. (ECF No. 15.) On September 10, 2018, Plaintiff's motion to dismiss the counterclaims was denied. (ECF Nos. 18, 26, 30.)

On December 11, 2018, Plaintiff filed a motion to allow him to take additional depositions. (ECF No. 29.) The parties filed a joint statement regarding the discovery disagreement on January 2, 2019. (ECF No. 31.) Upon review of the joint statement, the Court ordered the parties to further meet and confer and file a supplemental joint statement. (ECF No. 32.) On January 8, 2019, the parties filed a supplemental joint statement asserting that they were unable to resolve the dispute. (ECF No. 34.)

The Court heard oral argument on January 9, 2019. Counsel Heather Cohen and Michael Marderosian appeared with Plaintiff and counsel Michael Vasseghi appeared for Defendant. Having considered the joint statement, the declarations and exhibits attached thereto, arguments presented at the January 9, 2019 hearing, as well as the Court's file, the Court issues the following order.

## II.

## LEGAL STANDARD

Pursuant to Rule 30 of the Federal Rules of Civil Procedure, absent a stipulation, a party must obtain leave of the court to obtain more than ten depositions. Fed. R. Civ. P. 30(a)(2)(A)(i). "[T]he court must grant leave to the extent consistent with Rule 26(b)(1) and (2)." (Id.)

Pursuant to Rule 26 a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Rule 26(b)(2) provides

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be

obtained from some other source that is more convenient, less burdensome, or less expensive;
(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

This presumptive limit of ten depositions per side is intended to "promote cost-effective discovery and promote the federal rules' policy of minimizing 'unreasonably cumulative or duplicative' discovery." Thykkuttathil v. Keese, 294 F.R.D. 597, 599 (W.D. Wash. 2013) (quoting Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 30 Advisory Committee's Note (1993)). "A party seeking to exceed the presumptive limit bears the burden of making a 'particularized showing' of the need for additional depositions." Thykkuttathil, 294 F.R.D. at 600; Kaseberg v. Conaco, LLC, No. 15CV01637JLSDHB, 2016 WL 8729927, at *3 (S.D. Cal. Aug. 19, 2016); Nat. Res. Def. Council, Inc. v. Winter, No. CV057513FMCFMOX, 2008 WL 11338647, at *2 (C.D. Cal. July 11, 2008); but see Pitkin v. Corizon Health, Inc., No. 3:16-CV-02235-AA, 2018 WL 1336047, at *2 (D. Or. Mar. 13, 2018) ("the Federal Rules of Civil Procedure do not require a moving party to make a particularized showing of necessity when seeking leave to take additional depositions."[1]) Generally, courts require a party to exhaust their allowed number of depositions before moving to conduct additional depositions. Thykkuttathil, 294 F.R.D. at 600; Kaseberg, 2016 WL 8729927, at *3; Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc., No. 2:17-CV-01515-KJM-AC, 2018 WL 5993585, at *1 (E.D. Cal. Nov. 6, 2018); Nat. Res. Def. Council, Inc., 2008 WL 11338647, at *2.

Courts find that "allowing additional depositions without analyzing the need for the first

---

[1] Plaintiff relies on Pitkin for the proposition that a particularized showing of necessity is not required. The majority of courts in this circuit require the moving party to make a particularized showing of necessity in moving for additional depositions. See Olivo v. Fresh Harvest Inc., No. 17-CV-2153-L-WVG, 2018 WL 4927995, at *3 (S.D. Cal. Oct. 10, 2018); Galajian v. Beard, No. C15-0955JLR, 2016 WL 5373116, at *3 (W.D. Wash. Sept. 26, 2016); Osborne v. Billings Clinic, No. CV 14-126-BLG-SPW, 2015 WL 150252, at *2 (D. Mont. Jan. 12, 2015); Dominguez v. Schwarzenegger, No. C 09-2306 CW JL, 2010 WL 3341038, at *8 (N.D. Cal. Aug. 25, 2010); Finazzo v. Hawaiian Airlines, No. 05-00524 JMS-LEK, 2007 WL 1425241, at *3 (D. Haw. May 10, 2007). In considering whether to grant a request for additional depositions, the Court must determine if the information which Plaintiff seeks from the deponent is cumulative, duplicative, or unable to be obtained from another source. Requiring the party to make a particularized showing of necessity allows the Court to determine if there are good reasons for the additional depositions and whether they will serve a proper purpose or are merely duplicative or cumulative of those depositions that have already occurred. Bell v. Fowler, 99 F.3d 262, 271 (8th Cir. 1996). The Court agrees with those courts that find that Plaintiff must make a particularized showing of necessity to obtain additional depositions.

3

10 depositions would reward a party for taking superfluous depositions early in the course of discovery." Galajian v. Beard, No. C15-0955JLR, 2016 WL 5373116, at *2 n.3 (W.D. Wash. Sept. 26, 2016). The moving party is also required to exhaust less expensive and burdensome means of conducting discovery before resorting to a request for relief. Nat. Res. Def. Council, Inc., 2008 WL 11338647, at *2.

"Pursuant to Rule 26(b)(2)(C), courts have found it proper to deny additional depositions where they would be cumulative, without proper purpose, e.g., there is no evidence they would reveal anything other than what a party had already obtained, the party had ample opportunity to obtain the information by discovery in the action, or they would create an unreasonable burden or expense." Kaseberg, LLC, 2016 WL 8729927, at *3.

## III.

## DISCUSSION

In this action, Plaintiff seeks to take eighteen depositions.[2] Plaintiff to seeks to depose individuals that Defendant's investigator interviewed and additional individuals who were involved in commencing and conducting the investigation and the decision to terminate Plaintiff who were not interviewed. Defendant contends that Plaintiff's motion should be denied because he did not properly meet and confer regarding the depositions, did not complete the allowed ten depositions before bringing the instant motion, is seeking duplicative depositions, and seeks to depose the owner of the company who does not have information relevant to the case. Initially, Defendant contended that Plaintiff had refused to identify the first ten deponents so that Defendant can determine whether the additional depositions would be unreasonably cumulative or duplicative. Upon order of the Court, Plaintiff did identify the initial ten deponents, but the parties were still unable to resolve the dispute.

### A. Ten Depositions Allowed by Rule 30

The Court required Plaintiff to provide Defendant with the names of the first ten individuals to be deposed. The Court does note that as Plaintiff filed this motion prior to

---
[2] Initially, Plaintiff's request in the current motion was for twenty-five depositions. Based on the supplemental joint statement and the further meet and confer efforts, Plaintiff is no longer seeking to depose Craig Cooper, Adam Brown, Danny Garcia, Rene Flores, Kevin Adams, Arnold Viduya, and Dan Spaulding.

4

deposing the individuals the testimony set forth is speculative as to what the witnesses will testify.[3] Plaintiff has already deposed the following six individuals.

1. Fed. R. Civ. P. 30(b)(6) witness on 1) the investigation reported in Defendant's production of documents; 2) the time cards and other records that create the "substantial confirmation that [Plaintiff] has been using company employees for his personal benefit"; 3) the witness interviews that create the same; and 4) the basis for the termination of Plaintiff. (ECF No. 31 at 7.) The Rule 30(b)(6) witness was Tim Stehr, the individual assigned to conduct the investigation into allegations that Plaintiff was using company resources for his own purposes.

2. Victor Loera is identified as informant 1 in various investigative reports. (Id. at 7.) Mr. Loera had information that employees, including Plaintiff, were stealing millions of dollars from Defendant. Mr. Loera explained that this was occurring by changing timecards to reflect that work was being done on Defendant's property instead of Plaintiff's, changing the status of trees, and Plaintiff's scheme with Mr. Marroquin to bill Defendant for more people than showed up to work on the property. (Id.)

3. Jim Hatakeda is a farm manager who worked under Plaintiff and was responsible for numerous ranches that are owned by Plaintiff. (Id. at 8.) Mr. Hatakeda initially denied changing timecards, but then admitted that he regularly changed timecards at Plaintiff's direction so that Defendant would pay the bill rather than Plaintiff. (Id.) Mr. Hatakeda stated that this happened 25 to 30 times. Mr. Hatakeda claimed that Mr. Marroquin's employees would work at Plaintiff's property and bill the time to Defendant and that Plaintiff used inappropriate language. (Id.) Mr. Hatakeda claimed that Plaintiff was stealing and embezzling from Defendant. (Id.)

4. Tom Goldman oversaw the investigation of Plaintiff which led to his termination. Mr. Goldman appointed Tim Stehr to interview employees and vendors about Plaintiff. Mr. Goldman co-authored the investigative report that sets forth the evidence that justified Plaintiff's termination. Mr. Goldman was present during most of the interviews with Defendant's

---

[3] In this instance, the Court shall exercise its discretion to decide the motion as the majority of the witness testimony set forth does not appear to be in dispute.

5

employees.[4] (Id.)

While Defendant argues that the deposition of Mr. Goldman was duplicative and cumulative of the deposition of Mr. Stehr who conducted the investigation, there are other areas of inquiry that would be relevant in this action. For instance, how Mr. Goldman was hired, his previous contact with the corporation, and any relationship with Mr. Resnick could be enquired into during the deposition. The Court does not find that deposition of Mr. Goldman to be cumulative or duplicative.

5. Ignacio Gonzalez is identified as informant 2 in the investigative report. (Id. at 8.) Mr. Gonzalez was aware of the fraudulent billing that was going on and believed that his timecards were being changed and reduced to reflect less time on Plaintiff's farm and to bill Defendant for his time. (Id. at 8-9.) Mr. Gonzalez claimed that all the supervisors who work for Plaintiff change timecards and alter paperwork. (Id. at 9.) Mr. Gonzalez stated that Plaintiff and Mr. Marroquin were working together to shift charges from Plaintiff to Defendant. Mr. Gonzalez claims that Plaintiff threatened him. (Id.)

6. David Krause is the President of Wonderful. (Id. at 9.) He was present for the Rule 30(b)(6) witness deposition regarding Plaintiff's termination and was deposed individually on the same day. (Id. at 9-10.) Mr. Krause sent Mr. Marroquin a letter quoting parts of a contract between Mr. Marroquin's company and Defendant stating that Defendant had the right to look through Mr. Marroquin's records. (Id. at 10.) Plaintiff is not aware that this was done. Mr. Krause directed Danny Garcia to issue emails pertaining to Plaintiff's termination and unlawfully activity. (Id.)

Plaintiff will depose the following individuals to complete the ten depositions allowed by Rule 30.

7. Todd Consolacio initially denied changing time cards and then agreed to do so after told to by Plaintiff. (Id. at 9.) These changes were made to equal out the budgets and match the forecast. Mr. Consolacio denied that the timecards were changed to lessen the amount

---

[4] Plaintiff also states, 'Mr. Jordan threatened James Jordan with criminal charges." (ECF No. 31 at 8.) This appears to be a typographical error and the Court assumes that Plaintiff meant to state that Mr. Goldman threatened Plaintiff with criminal charges.

of time that was billed to Plaintiff but had heard that such changes were occurring. (Id.)

8. Gus Marroquin owns and operates Mid-Cal Farm Labor which provides people to work in the citrus fields for Defendant. (Id. at 10.) Mr. Marroquin's workers prune, plant, and irrigate. Defendant contends that Plaintiff and Mr. Marroquin conspired together to steal from Defendant. (Id.) Defendant alleges that Plaintiff and Mr. Marroquin would arrange for workers to work on Plaintiff's fields and submit a bill to Defendant stating the work was done for Defendant. This caused Defendant to pay for work that was done on Plaintiff's fields. (Id.)

9. Alice Delgado works in Human Resources and denies knowing anything about wrongdoing and theft. (Id. at 11.) She claims that it was common knowledge that Plaintiff used bad language, she had received complaints about it, and was placed on notice. (Id.) At the January 9, 2019 hearing, Plaintiff clarified that Ms. Delgado stated that she informed Plaintiff about the complaints so he was on notice to correct his behavior.

10. Doug Carmen was Plaintiff's boss. (Id. at 14.) Mr. Carmen can testify to Plaintiff's work as well as his practices with the company such as changing timecards. Mr. Carmen can testify to providing authority for Plaintiff to purchase certain items for Defendant. (Id.) Defendant believes that Mr. Carmen and Plaintiff were conspiring together to steal from the company. Mr. Carmen believed that someone at Wonderful was trying to get Plaintiff fired, the investigation was handled improperly, and that the questions asked were inappropriate. (Id.)

### B. Additional Depositions Sought

Plaintiff seeks to depose eight additional individuals. To the extent that Plaintiff seeks to depose these individuals because they may testify at trial as they were interviewed by Defendants, this is not a particularized showing as required to grant the additional depositions. Finazzo v. Hawaiian Airlines, No. 05-00524 JMS-LEK, 2007 WL 1425241, at *3 (D. Haw. May 10, 2007).

Plaintiff seeks to depose Austin Williams, Nick Theis, Emmett Dietz, Jose Lima, and Virginia Zambrano as they all worked directly under the supervision of Plaintiff. Plaintiff states that they can address the issues concerning his termination and the claim that he created a hostile work environment and used unacceptable language. Defendant argues that Jim Hatakeda and

Ignacio Gonzalez have already been deposed and they both worked directly under Plaintiff. Defendant contends that Mr. Hatakeda and Mr. Gonzalez have already testified that Plaintiff changed timecard and as to Plaintiff's treatment of them and the racial and derogatory language that created a hostile work environment. Further, Defendant argues that Plaintiff has deposed Mr. Krause on the topic of why Plaintiff was terminated. Therefore, Defendant contends that these depositions are duplicative and unnecessary.

    1.    Nick Theis worked directly under the supervision of Plaintiff and can address issues pertaining to Plaintiff's termination and the allegations that Plaintiff created a hostile work environment and used hostile language. (ECF No. 34 at 3.) Mr. Theis acknowledged during his interview that he has changed timecards for budgetary reasons and never intentionally moved billing so that one farm was billed less than another. (Id.) Mr. Theis stated that he moved things around to be more equitable and that is how he was taught to maintain the budget. Mr. Theis will testify as to Defendant's interview tactics and how has heard that Plaintiff was fired for stealing. (Id.)

Mr. Theis stated that he had no knowledge of wrongdoing or of changing timecards. While much of the expected testimony by Mr. Theis is similar to previous testimony, Mr. Theis will also testify regarding how he was taught to maintain the budget which included changing timecards for budgetary reasons. There is no similar testimony appearing in the record. Additionally, Mr. Theis is expected to testify that he heard that Plaintiff was fired for stealing. Defendant has not shown that this testimony is duplicative of testimony by the prior deponents. Therefore, the Court finds that Mr. Theis' testimony is not necessary duplicative or unreasonably cumulative. Plaintiff's request to depose Mr. Theis is granted.

    2.    Emmett Dietz worked directly under the supervision of Plaintiff and can address issues pertaining to Plaintiff's termination and the allegations that Plaintiff created a hostile work environment and used hostile language. (Id. at 4.) Mr. Dietz would testify that Defendant threatened his job prior to the interview and he felt so much pressure that he physically passed out. Mr. Dietz admitted to correcting timecards for budgetary reasons. (Id.) Mr. Dietz has been identified as having knowledge of the allegations set forth in Defendant's counterclaim. He will

also discuss Defendant's interview tactics. (Id.)

While Mr. Dietz testimony regarding a hostile work environment, Plaintiff's use of foul language, and that he changed timecards for budgetary reasons is similar to previous deposition testimony, the Court finds that the allegations regarding the pressure that Mr. Dietz felt due to the interview process is sufficiently unique from the other deponents to allow his deposition. Accordingly, Plaintiff's request to depose Mr. Dietz is granted.

3. Jose Lima worked directly under the supervision of Plaintiff and can address issues pertaining to Plaintiff's termination and the allegations that Plaintiff created a hostile work environment and used hostile language. (Id. at 4.) He oversaw the nursery and there are allegations that Plaintiff received trees that he did not pay for. Mr. Lima stated that he knows when trees are moved and that there are systems in place to make sure trees are properly charged to the farms they are sent to. (Id.) Mr. Lima stated that Plaintiff was billed directly. Mr. Lima will discuss his interactions with Plaintiff and Defendant's interview techniques. (Id.)

Although Mr. Lima's testimony is largely duplicative of previous deposition testimony, Plaintiff seeks to depose him regarding the movement and charges for trees. There are allegations that Plaintiff had trees delivered to his property that were charged to Defendant so this testimony is relevant to the issues in the action. Defendant has not shown how this testimony regarding the movement and manner in which trees were handled is duplicative of other deposition testimony. Plaintiff's request to depose Mr. Lima is granted.

4. Austin Williams worked directly under the supervision of Plaintiff and can testify to issues pertaining to Plaintiff's termination and the allegations that Plaintiff created a hostile work environment and used hostile language. (Id. at 3.) Mr. Williams stated that Plaintiff used foul language and became very defensive and nervous during his interview. (Id.) Defendant contends that Mr. Williams and Plaintiff had a close personal relationship. Plaintiff believes that Mr. Williams will testify that Defendant threatened him and others during the interviews and that he was fired for refusing to cooperate during the investigation. (Id.) Mr. Williams will testify that he was interviewed for three hours, accused of being a liar, and other tactics used during the investigation. (Id.)

9

Mr. Williams has no knowledge regarding the issue of changing timecards. His deposition is sought to testify to his treatment by Defendant during and due to the investigation and to the allegations regarding a hostile work environment. However, Plaintiff has already deposed two other individuals, Mr. Hatakeda and Mr. Gonzales, who worked with Plaintiff and have testified that Plaintiff threatened them or used inappropriate language. Furthermore, the court is granting the request to depose three other individuals that will testify on these same issues. To the extent that Plaintiff seeks to depose Mr. Williams to testify to the treatment he received during the interview, Mr. Theis, Mr. Dietz, and Mr. Lima will provide similar testimony. Finally, Mr. Williams belief that he was fired for failing to participate in the investigation is immaterial as to whether Plaintiff was terminated due to age discrimination or for embezzling from the company and creating a hostile work environment. Considering the Rule 26 factors, the Court finds that the testimony of Mr. Williams would be unreasonably cumulative or duplicative. Plaintiff's request to depose Mr. Williams is denied.[5]

5. Virginia Zambrano worked directly under the supervision of Plaintiff as his administrative assistant and can address issues pertaining to Plaintiff's termination and the allegations that Plaintiff created a hostile work environment and used hostile language. (Id. at 4.)

---

[5] Plaintiff states that it is potentially unethical under Rule 2-100 of the California Rules of Professional conduct for counsel to contact the witnesses. Rule 4.2 of the California Rules of Professional Conduct (formerly Rule 2-100) provides that a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter without the other lawyer's consent. CA ST RPC Rule 4.2(a). As relevant here, in the case where a corporation is represented, the rule prohibits communication with a current officer, director, partner, or managing agent of the corporation or a current employee, member agent or other constituent of the organization. CA ST RPC Rule 4.2(b).

Mr. Williams is no longer employed by Wonderful. The rule "does not prohibit an opposing counsel's ex parte contact with former employees of a corporation who were not members of the corporation's 'control group.' The corporation's 'control group' was defined as 'officers and agents . . . responsible for directing [the company's] actions in response to legal advice.' " Triple A Mach. Shop, Inc. v. State of California, 213 Cal. App. 3d 131, 139, 261 Cal.Rptr. 493, 498 (1989) (quoting Bobele v. Superior Court, 199 Cal.App.3d 708, 712 (1988) and Upjohn Co. v. United States, 449 U.S. 383, 391 (1981)). The rule permits "opposing counsel to initiate ex parte contacts with unrepresented former employees, and present employees [other than officer, directors, or managing agents] who are not separately represented, so long as the communication does not involve the employee's act or a failure to act in connection with the matter which may bind the corporation, be imputed to it, or constitute an admission of the corporation for purposes of establishing liability." Cont'l Ins. Co. v. Superior Court, 32 Cal.App.4th 94, 107 (1995) (quoting Triple A Mach. Shop, Inc., 213 Cal.App.3d at 140). Mr. Williams, as a farming supervisor, would not appear to fall within the definition of a control group employee. Further, Mr. Williams statements regarding the manner the investigation was conducted and his allegation that he was terminated for refusing to participate in the investigation are not matters that would bind the corporation.

Ms. Zambrano deals with timecards from Mr. Marroquin and stated that she has never seen any problems with the time cards. (Id.) She stated that Plaintiff has used inappropriate language in her presence and Plaintiff told her to tell the truth during the interview. (Id.)

Ms. Zambrano's testimony is largely duplicative of previous deposition testimony. Although Plaintiff alleges that Ms. Zambrano deals with timecards from Mr. Marroquin and has never seen any problems with them, it is unclear how this testimony is relevant. Defendant alleges that Plaintiff had timecards changed prior to submitting them to Defendant and while Ms. Zambrano "deals with timecards" from Mr. Marroquin, there is no allegation that she processes time cards nor does Plaintiff identify what she does in "dealing" with the timecards. Considering the Rule 26 factors, the Court finds that the testimony of Ms. Zambrano would be unreasonably cumulative or duplicative. Plaintiff's request to depose Ms. Zambrano is denied.

6. Plaintiff also seeks to depose Lisa Krause stating that she is the source of the investigation and his termination. Ms. Krause was specifically referenced in testimony by Mr. Loera and Mr. Krause. Defendant counters that three informants in the investigation have already been deposed and deposing Ms. Krause will not add anything further.

Ms. Krause is the spouse of Mr. Krause who is the President of Wonderful. (Id. at 5.) Ms. Krause believed that Plaintiff was stealing from the company and that is how he paid for his house at Shaver Lake. (Id.) Ms. Krause and Mr. Loera were actively communicating about Plaintiff and Ms. Krause was directly involved in the investigation and communicated her opinions about Plaintiff to Mr. Krause. (Id.)

At the January 9, 2019 hearing, Defendant argued that even if the investigation was instigated based on Ms. Krause's opinion, it is irrelevant because Plaintiff was terminated based on the results of the investigation. Although Ms. Krause is married to the President of the company, her opinions of Plaintiff are not relevant in this action. To the extent that Plaintiff believes that Ms. Krause communicated with Mr. Loera and expressed her opinions to Mr. Krause, Plaintiff has pointed to no evidence that deposing Ms. Krause would reveal anything other than what Plaintiff had already obtained. Although Plaintiff states that Ms. Krause was directly involved in the investigation, Plaintiff has not alleged how she was involved other than

expressing her opinions about Plaintiff. Plaintiff has had the opportunity to depose Mr. Loera and Mr. Krause and has not made a particularized showing of the necessity to depose Ms. Krause and the general allegation that she directed the investigation is not a particularized showing of necessity for the deposition. Plaintiff's request to depose Ms. Krause is denied.

7. Plaintiff seeks to depose Stewart Resnick who is the owner of the company alleging that he authorized the investigation and termination of Plaintiff. Defendant counters that everything Mr. Resnick would testify to has already been testified to in other depositions. Further, Defendant contends that Mr. Resnick is an apex witness who can only be deposed if he has unique information that is not available from other witnesses. At the January 9, 2019 hearing, Plaintiff represented that Mr. Resnick made the decision to investigate and the final decision on termination. Defendant countered that Mr. Resnick relied on Mr. Krause to do the investigation and for the decision to terminate. Defendant continued to assert that Mr. Resnick does not have any additional information beyond that known by Mr. Krause who has already been deposed.

Plaintiff states that the deposition of Mr. Resnick will deal with 1) his knowledge and involvement in initiating and conducting the investigation; 2) his communications with Mr. Krause regarding his desire to pursue criminal charges against Plaintiff; 3) the reason and basis that Mr. Resnick wanted to pursue criminal charges against Plaintiff; 4) Mr. Resnick's approval of Plaintiff's termination; and 5) Mr. Resnick's involvement and approval of the two emails sent to Defendant's employees regarding Plaintiff's termination. (Id. at 5.)

The deposition of a high-level official or executive is often referred to as an "apex" deposition. Estate of Levingston v. Cty. of Kern, 320 F.R.D. 520, 525 (E.D. Cal. 2017). Courts have held that such discovery creates tremendous potential for abuse and harassment; and therefore, courts have the discretion to limit such discovery. Apple Inc. v. Samsung Elecs. Co., Ltd, 282 F.R.D. 259, 263 (N.D. Cal. 2012); Estate of Levingston, 320 F.R.D. at 525. "[T]he closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become." Apple Inc., 282

F.R.D. at 263. Here, Mr. Resnick, as the owner of the corporation, is sufficiently high ranking to invoke the privilege.

Plaintiff cites to Kyle Eng'g Co. v. Kleppe, 600 F.2d 226, 231 (9th Cir. 1979), for the proposition that apex depositions are permitted where the individual has "direct personal factual information pertaining to material issues in the action and the information to be gained in not available through other sources." (ECF No. 31 at 15.) In Kyle the appellate court found that the district court did not abuse its very wide discretion in handling pretrial discovery by vacating a deposition notice for the Administrator of the Small Business Association and setting a date for the end of discovery. Kyle Eng'g Co., 600 F.2d at 231. The court noted that heads of governmental agencies are not normally subject to deposition and requiring interrogatories in lieu of a deposition appeared reasonable. Id. Kyle does not support Plaintiff's argument that direct involvement allows a high ranking official to be deposed.

In Bogan v. City of Boston, 489 F.3d 417 (1st Cir. 2007), the First Circuit held that "[d]epositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated." Bogan, 489 F.3d at 423. However, even in these circumstances, the discovery is permitted only where it is shown that the necessary information cannot be provided by other persons. Id. In Bogan the plaintiffs were attempting to depose the mayor in a case in which they claimed that he had directed that their property be inspected to force them to sell to make room for an economic development project. Id. at 421, 423. The plaintiffs relied on evidence that an employee wrote a note that the Mayor's Office had received complaints from neighbors about their property and the mayor had ordered an inspection as a result and that the inspection had been ordered shortly after it was disclosed that they were using the property as a rooming house. Id. at 423-24. The plaintiffs argued that this was sufficient to support an inference that the mayor had ordered the inspection on a tip from the Neighborhood Development Corporation because they shared a goal to force the plaintiffs from their property. Id. at 424. The appellate court found that the plaintiffs' argument failed because they had not obtained relevant information from other sources prior to turning to the mayor. Id. The identity of the individual who ordered the inspection was a disputed issue of fact. Id. The

13

plaintiffs did not obtain discovery from other individuals who were aware of the mayor's involvement. Id.

In Coleman v. Schwarzenegger, No. CIV S-90-0520LKKJFMP, 2008 WL 4300437, at *3 (E.D. Cal. Sept. 15, 2008), the plaintiffs were attempting to depose the governor and his chief of staff regarding measures they had taken or proposed to alleviate prison conditions and regarding statements they made about overcrowding and the progress of prison reform. The court cited Bogan for the extraordinary circumstances test. Coleman, 2008 WL 4300437, at *2.

The Coleman court held that even if the information was relevant in the action and would otherwise be discoverable, "plaintiffs must still show that there are 'extraordinary circumstances' that justify deposing the two high-ranking officials, specifically that they possess personal knowledge of facts critical to the outcome of the proceedings and that such information cannot be obtained by other means." Id. These decisions are consistent with case law within this circuit which considers the unique person knowledge of the official whose deposition is sought.

"In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." Apple Inc., 282 F.R.D. at 263 (quoting In re Google Litig., C 08–03172 RMW (PSG), 2011 WL 4985279, at *2, 2011 U.S. Dist. LEXIS 120905, at *10 (N.D. Cal. Oct. 19, 2011)); accord Groupion, LLC v. Groupon, Inc., No. 11-0870 MEJ, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012). When a witness has personal knowledge of facts relevant to a lawsuit, even a high ranking corporate office is subject to deposition. Apple Inc., 282 F.R.D. at 263.

The deposition of a high-ranking official can be held where the official has firsthand knowledge of the issues in the case. Affinity Labs of Texas v. Apple, Inc., No. C 09-4436 CW JL, 2011 WL 1753982, at *2 (N.D. Cal. May 9, 2011). However, "[w]here a high-level decision maker 'removed from the daily subjects of the litigation' has no unique personal knowledge of the facts at issue, a deposition of the official is improper[,]" especially where the information sought can be obtained through less intrusive means or from lower level employees with more direct knowledge of the facts at issue. Groupion, LLC, 2012 WL 359699, at *2.

1 Plaintiff seeks to establish such knowledge by alleging that Mr. Resnick was directly involved in and made the decision to fire Plaintiff. However, in this instance the evidence before the Court establishes that, while the decision to terminate Plaintiff's employment may have been approved by Mr. Resnick, he did not have unique first-hand, non-repetitive knowledge of the facts at issue in this case.

Specifically, the investigation was instituted by Mr. Krause who hired the investigators, read the reports, and communicated the information to Mr. Resnick. Mr. Krause stated in his deposition that firing Plaintiff was outside of his authority. However, this does not demonstrate that Mr. Resnick has unique first-hand non-repetitive knowledge of any fact at issue in this action. Rather as Defendant argued, Mr. Resnick was informed of the facts by Mr. Krause and concurred that Plaintiff had engaged in misconduct and should be terminated. In making this determination the Court considers that Mr. Resnick did not hire the investigators, the investigators reported to Mr. Krause, and Mr. Resnick did not receive or review the investigation reports but was verbally informed of the results of the investigation by Mr. Krause.

Plaintiff has deposed Mr. Krause who has testified to the reasons that the decision was made to terminate Plaintiff. Plaintiff has not demonstrated that Mr. Resnick has unique first-hand, non-repetitive knowledge of the reasons that Plaintiff's employment was terminated. Deposing Mr. Resnick would be cumulative and duplicative of Mr. Krause' deposition testimony.

Plaintiff has already deposed numerous individuals on the reason that he was terminated. Specifically, Plaintiff has deposed the company's president, Mr. Krause, on this specific issue. While Plaintiff argues that he wishes to depose Mr. Resnick on his desire to pursue criminal charges against Plaintiff and why he wished to pursue criminal charges, this is not material to the action and does not provide a basis to grant the deposition.

Plaintiff also states that he wishes to depose Mr. Resnick on his involvement and approval of two emails sent out to Defendant's employees pertaining to Plaintiff's termination. Plaintiff had the opportunity to depose Mr. Krause who directed that the emails be sent and has set forth no evidence that would suggest that Mr. Resnick was personally involved in sending the

emails or has any unique first hand, non-repetitive knowledge regarding the emails.

For these reasons, Plaintiff's motion to depose Mr. Resnick is denied.

8. Finally, Plaintiff seeks to depose Linda Welch as she works in the accounting department and can address the issues raised in Defendant's counterclaim. (ECF No. 34 at 5-6.) Plaintiff contends that Ms. Welch will testify to how often supervisors changed timecards and how easy it is to miscode a timecard due to the company's complex system. (Id. at 6.) Additionally, Ms. Welch handles the farming cost report and would be aware of what was billed to Plaintiff. (Id.)

Defendant states that Ms. Welch's deposition is not duplicative of others that have already been completed and the information would be difficult to ascertain from other sources.

As Ms. Welch has relevant information which is not duplicative and would be difficult to ascertain elsewhere, the Court shall grant Plaintiff's request to depose Ms. Welch.

## IV.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's motion to allow additional depositions is GRANTED IN PART AND DENIED IN PART as follows.

1. Plaintiff's request to depose Austin Williams, Virginia Zambrano, Lisa Krause, and Steve Resnick is DENIED; and
2. Plaintiff's request to depose Nick Theis, Emmett Dietz, Jose Lima, and Linda Welch is GRANTED.

IT IS SO ORDERED.

Dated: **January 11, 2019**

UNITED STATES MAGISTRATE JUDGE