1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF CALIFORNIA

3                            --oOo--

4    JAMES K. JORDAN,                ) Case No. 18CV00401-AWI-SAB
                                     )
5             Plaintiff,             ) Fresno, California
                                     )
6         vs.                        ) Monday,
                                     ) October 7, 2019
7    WONDERFUL CITRUS PACKING        ) 1:30 p.m.
     LLC, et al.,                    )
8                                    )
              Defendants.            ) VOLUME XIII
9    _____)

10                       TRANSCRIPT OF TRIAL
                  BEFORE THE HONORABLE ANTHONY W. ISHII
11            UNITED STATES DISTRICT JUDGE, and a jury

12   APPEARANCES:

13   For the Plaintiff:             HEATHER S. COHEN, ESQ.
                                    MICHAEL G. MARDEROSIAN, ESQ.
14                                  Marderosian, Cercone & Cohen,
                                       APC
15                                  1260 Fulton Mall
                                    Fresno, California 93721
16                                  (559) 441-7991

17   For the Defendants:           MICHAEL M. VASSEGHI, ESQ.
                                   JAMES P. PECHT, ESQ.
18                                 COURTNEY E. VAUDREUIL, ESQ.
                                   Roll Law Group, PC
19                                 11444 West Olympic Boulevard
                                   7th Floor
20                                 Los Angeles, California 90064
                                   (310) 966-8252

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

XIII-ii

Transcriber:                        Crystal Thomas
                                    Echo Reporting, Inc.
                                    2160 Fletcher Parkway, Suite P
                                    El Cajon, California 92020
                                    (858) 453-7590

XIII-1

1      <u>FRESNO, CALIFORNIA  MONDAY, OCTOBER 7, 2019  1:30 P.M.</u>

2                           --oOo--

3        (Call to order of the Court.)

4              THE COURT:  Good afternoon.

5              Our court reporter Karen is still in session with

6   Judge Drozd.  As soon as she's done, she'll come in and pick

7   up, but we've got the electronic recording so that's taking

8   down obviously verbatim what occurs.  So just make sure that

9   you're near a microphone so that it can pick up everyone's

10  comments.

11             Okay.  In this case, I have received some proposed

12  modifications to the jury instructions and the verdict form.

13  And plaintiff's side indicated they might have some issues

14  with respect to the jury instructions, possibly the verdict

15  form also.

16             MS. COHEN:  A minor issue on the verdict form,

17  your Honor.

18             THE COURT:  Okay.  All right.

19             MS. COHEN:  In regard to the jury instructions --

20             THE COURT:  Yes.

21             MS. COHEN:  -- we have one comment regarding the

22  "Defamation Per Se" instruction.  But I think that's going

23  to be a little bit more complicated, so I'm going to come

24  back to that one.

25             THE COURT:  Okay.

XIII-2

1          MS. COHEN:  In regard to the instruction "Business

2   Judgment," which is found on page 21 of the Court's

3   packet --

4          THE COURT:  Yes.

5          MS. COHEN:  -- that should be, in plaintiff's

6   view, removed.  That instruction comes under the FEHA jury

7   instructions.

8          The following page, there is a "Breach of

9   Employment Contract - At-Will Presumption" instruction, so

10  in our view, the "Business Judgment" instruction is, number

11  one, redundant and, number two, no longer applicable since

12  the FEHA/CACI claim is no longer at play.

13         THE COURT:  All right.  And defense response?

14         MR. VASSEGHI:  Your Honor, I don't think we have a

15  problem with the removal of the "Business Judgment"

16  instruction.

17         THE COURT:  All right.  So that will be removed.

18         MS. COHEN:  Thank you, your Honor.

19         In regard to that "Breach of Employment Contract -

20  Unspecified Term - Essential Factual Elements," in the first

21  element it says that "James Jordan and Wonderful Citrus

22  Packing LLC entered into an employment relationship.  An

23  employment contract or a provision in the employment

24  contract may be written or oral."

25         That comes from the CACI 2401 bracketed language,

XIII-3

1 and the proposed bracketed language says "written or

2 oral/partly written and partly oral/created by the conduct

3 of the parties."  And given the fact that the claim at issue

4 is an implied contract in fact, the plaintiff believes that,

5 quote, "created by the conduct of the parties" is the

6 appropriate language to insert in lieu of "an employment

7 contract or provision in the employment contract may be

8 written or oral."

9          And I have the CACI 2401 printed out if the Court

10 would like to look at it, if it's not handy.

11          THE COURT:  All right.  Let me ask you this.  Is

12 that instruction -- should that still be given in light of

13 the next one at page 24 that discusses specifically an

14 implied in fact employment agreement?

15          MS. COHEN:  Your Honor, I had the same question.

16 I think the issue is whether or not the Court needs to give

17 an instruction as to essentially what the elements of breach

18 of employment contract would be.

19          If you look at the elements on the page 23

20 instruction, it says that "James Jordan and Wonderful

21 entered into an employment relationship" -- I obviously

22 don't think that's in dispute -- "that Wonderful Citrus

23 promised by words or conduct to discharge James Jordan for

24 good cause, that James Jordan substantially performed his

25 job duties," et cetera.

XIII-4

1    We would be fine, your Honor, with just the

2 instruction on page 24.  But I don't know what the

3 defendants' position is on that.

4    THE COURT:  All right.  Defense?

5    MR. VASSEGHI:  So, your Honor, is the question

6 whether --

7    THE COURT:  Yeah, the question is -- you know, I

8 had the breach of employment contract at page 23 setting out

9 elements.  It possibly is confusing because we talk about a

10 written or oral contract and here we're only talking about

11 an implied in fact promise not to discharge without good

12 cause.

13    So I'm wondering whether we need 23, or whether

14 just 24 is sufficient for the implied in fact agreement

15 claim.

16    MR. VASSEGHI:  Your Honor, I think we would want

17 to keep the instruction on page 23 in there because there

18 are some additional factors in that instruction that are not

19 found in what's on page 24.  So I think it's actually more

20 complete.

21    MR. PECHT:  But the problem with that also with

22 the change, we're fine with that change with the changing

23 "written or oral" to --

24    MS. COHEN:  "Created by the conduct of the

25 parties."

XIII-5

1          MR. PECHT:  "Created by the conduct" -- but the
2  problem is then there needs to be some sort of reference to
3  the fact that if there is an at-will provision in an express
4  agreement, then there may not be an agreement to the
5  contrary, because otherwise, the implication from what is
6  now 23 would seem to imply you could have that if there was
7  a written agreement.

8          MS. COHEN:  I think that's found on page 24 at the
9  bottom.

10          MR. PECHT:  Yeah, and our problem is that if you
11  have a standalone, it's contradictory to that.  So either --
12  you know, we were suggesting that we have that provision on
13  this one as well as found on 24, literally that line.

14          MS. COHEN:  Well, I --

15          MR. PECHT:  Or alternatively, our suggestion is
16  that we provide a separate instruction.  But it's just --
17  when you read this, it would be contradictory -- it would
18  seem to have conflicting instructions on 23 and 24.

19          MS. COHEN:  I don't think you include it twice
20  because I think it's emphasizing -- overemphasizing it, and
21  I don't believe that's what Fagan says.

22          But if you want to move it from page 24 to page
23  20- -- I mean I think it's appropriate on page 24 where the
24  Court has it, but I mean that's just --

25          THE COURT:  Yeah, I would only include it once.

XIII-6

1  Where you have it in there, whether it's at page 23 or 24 --

2          MS. COHEN:  I think based on the CACI guidelines,

3  it seems like it's appropriate on page 24, your Honor.

4          MR. PECHT:  Well, I think the CACI guidelines just

5  say that it should be given us an instruction.  So I guess

6  what our solution was, if you don't want to put it on

7  multiple pages, then it might be appropriate as a standalone

8  instruction, which we proposed, so there's no confusion.

9          MS. COHEN:  I don't think I saw that.  If you have

10 a copy, can I take a look at it.  But then it would be

11 removed from the bottom of page 24, Mr. --

12          Your Honor, is that what the defendant is

13 proposing?

14          THE COURT:  All I can say is I wouldn't do it

15 twice.  So it a matter of whether -- if we keep the

16 instruction on page 23 -- if you want to put it there

17 instead of at page 24, that's fine.  But I wouldn't give it

18 twice.

19          MR. VASSEGHI:  Your Honor, is there an objection

20 to just having it be a standalone instruction?

21          THE COURT:  And I don't have a problem with that

22 either.  It's up to you folks.  I don't know if you want to

23 try to meet and confer on page 23 and 24 to come up with

24 something that's agreeable to both sides or you just want me

25 to rule.

XIII-7

1          I don't have a problem with keeping it on 23 --
2   both 23 and 24.  And I don't have a problem with that last
3   sentence or paragraph of page 24 being freestanding.  It
4   would just come right after -- it would be 23, 24 and then
5   the new page 25 would just have that provision, so it would
6   be right after that.  Regardless of whether it's
7   incorporated in the instruction at page 24 or comes
8   immediately after, I think the net effect would be the same.
9          MS. COHEN:  And I'm fine with that, your Honor,
10  provided that it's the language proposed by the Court at the
11  bottom of page 24.
12         THE COURT:  All right.
13         MS. COHEN:  And then I guess I would just suggest
14  that we replace the language at the end of element number
15  one on page 23 with "created by the conduct of the parties,"
16  which is one of the bracketed proposed terms suggested by
17  CACI 2401.
18         MR. PECHT:  We're fine with that.
19         MS. VAUDREUIL (Telephonic):  Your Honor --
20         THE COURT:  All right.  So what we'll do then is
21  I'll keep in the instruction at page 23.  I will add at
22  paragraph one that additional language and I would keep in
23  the instruction at page 24, except that I will remove that
24  last sentence, "If you find that," et cetera.  And it will
25  be a freestanding instruction so that it will be the new

XIII-8

1  page 25, and then everything else will be renumbered after

2  that accordingly.

3           MS. VAUDREUIL:  Your Honor, can we actually have

4  the implied in fact agreement instruction follow the

5  instruction that's currently at page 22, the at-will

6  presumption?  I think it makes more sense to put it in front

7  of the kind of definition going through what an implied

8  contract is.

9           MS. COHEN:  I don't agree with that, your Honor.

10          THE COURT:  Okay.  All right.  Yeah, I understand

11  the suggestion, but I'll just put it at the end, a separate

12  section at a new page immediately after page 24, so it would

13  be the new 25.

14          MS. VAUDREUIL:  The only thing concern, your

15  Honor, is that it doesn't seem clear.  And maybe this is

16  just my misunderstanding, but the instruction on page 23, it

17  doesn't state anywhere that it deals with an implied in fact

18  agreement, so that might be where we're running into the

19  ambiguity.  So maybe we could also change it so that in the

20  title it reflects it so at least we have some understanding

21  for the jury on where this is coming from.

22          THE COURT:  Okay.  I'm sorry, so what specifically

23  are you suggesting?

24          MS. VAUDREUIL:  I'm just trying to clarify, is 24

25  coming in as breach of contract or -- it seems like it's

XIII-9

1 encompassing the implied in fact contract, so I'm just not

2 sure.  The one on page 23 -- it seems like the one on page

3 24 is to define the good cause.

4            I'm sorry, your Honor, I'm just trying to

5 understand if 24 is only implied in fact.

6            THE COURT:  Yes.

7            MS. VAUDREUIL:  It's not the only implied in fact

8 instruction.

9            THE COURT:  Yes.

10           MS. VAUDREUIL:  Okay.  So then I guess my only

11 suggestion would be that maybe we put in the standalone

12 before that one.

13           THE COURT:  Okay.  Got it.  Okay.  I'll just go

14 ahead and I'll add it behind what is currently the

15 instruction at page 24.

16           MS. VAUDREUIL:  Thank you, your Honor.

17           THE COURT:  All right.  Next for plaintiff on jury

18 instructions.

19           MS. COHEN:  Your Honor, the other instruction that

20 we want to raise with the Court is in regard to the

21 "Defamation Per Se" instruction.  And based on email

22 exchanges with defense counsel, I think that they have an

23 issue in regard to number one, which Mr. Marderosian will

24 address along with defense counsel.

25            In terms of the top -- and that's statement number

XIII-10

1   one, "James Jordan was involved in criminal activity" --

2          THE COURT:  Yes.

3          MS. COHEN:  In terms of number two and number

4   three, it's our position that it should read that the email

5   in Exhibit JT-1 and then the parenthetical in conjunction

6   with the email in Exhibit JT-2 and then the parenthetical.

7   And that is because the preparatory statement is that "James

8   Jordan claims that Wonderful Citrus LLC harmed him by making

9   the following statements."

10          And it's our claim that the two emails in

11   conjunction with one another are what the harmful statement

12   was as opposed to the two of them standing alone.  And so I

13   would just add "in conjunction with" and bring up paragraph

14   number three into number two.

15          THE COURT:  All right.

16          MS. COHEN:  And then I'll allow Mr. -- I've have

17   Mr. Marderosian address the "James Jordan was involved in

18   criminal activity" bullet point.

19          THE COURT:  Okay.

20          MR. MARDEROSIAN:  I don't know if the defendants

21   still have an issue with it.  I mean yesterday you exchanged

22   the specific testimony representation and -- for example, I

23   have testimony, official transcript regarding Emmett Dietz

24   and the question was:

25          "Q    Did Mr. Krause ever say to you

XIII-11

1          that Mr. Jordan is involved in criminal

2          activity, yes or no?

3          A     Answer:  Yes.

4          Q     And was he with a gentleman by the

5          name of Craig Cooper and did he also

6          indicate to you that Mr. Jordan is

7          involved in criminal activity?

8          A     Yeah."

9          And then there was the testimony from Doug Carman

10   and the question to Doug Carman on page 24, lines 10 through

11   16:

12          "Q     Were there other meetings that

13          you had with David Krause about the

14          issue of James Jordan concerning this

15          investigation?

16          A     I saw him briefly after the

17          meeting that I had with Tom and David

18          outside the restaurant in Delano, and

19          yeah, he made statements later on that

20          James had been stealing from the company

21          but not in the formal setting.  It was

22          an informal setting."

23          So I don't know what the objection is, but that's

24   the evidence.

25          THE COURT:  All right.  Okay.  Let's take

XIII-12

1  subparagraph one first.

2          Defense position?

3          MR. VASSEGHI:  Your Honor, I think the testimony

4  by Mr. Dietz was that on the following page, on page 48 of

5  his testimony, when he was asked by Mr. Marderosian what did

6  Mr. Krause say, as opposed to the earlier testimony which it

7  was a leading question, which -- the question contained the

8  information which the witness agreed to.

9          But what the witness said is, yeah, that they had

10 pretty much proved that he had stolen from the company and

11 that they were doing this investigation.

12          So, according to Mr. Dietz's testimony, that's

13 what Mr. Krause said.

14          And then what Mr. Marderosian just read from Doug

15 Carman's testimony also doesn't say that James Jordan was

16 engaged in criminal activity.  He said -- he made statements

17 later that James had been stealing from the company.

18          I believe that this Court has been very specific

19 that we need to show the actual words spoken, not what

20 counsel is arguing was spoken but the actual words that were

21 spoken.

22          And if you look at both Mr. Dietz, which -- and

23 Mr. Carman, which counsel is relying on, they didn't really

24 say exactly that Mr. Jordan was engaged in criminal

25 activity, and that is why we proposed the change that we

XIII-13

1  did.

2          MR. MARDEROSIAN:  Your Honor, there's two

3  specific -- three specific references about this subject,

4  and I don't think that -- you know, it's a witness

5  recounting what he heard Mr. Krause said.

6          And let's keep in mind, Mr. Krause never got on

7  the witness stand and denied any of the testimony of Mr.

8  Dietz.  And specifically Mr. Dietz in two sections of his

9  deposition -- the first reference was -- and there was no

10 objection to the question:  "Did he say that or not about

11 involved in criminal activity?"  "Yes, and so did Mr.

12 Cooper."

13          Then the second part of Mr. Dietz's testimony, he

14 says that Mr. Krause said that Mr. Jordan had, quote,

15 "stolen from the company."

16          Then we go to Doug Carman, and he says Mr. Krause

17 told him that James was, quote, "stealing from the company,"

18 end of quote.

19          So this is the testimony of the witnesses.  So I

20 don't know what the objection is.  I've only used the term

21 "involved in criminal activity," but if they want to add

22 "stolen from the company" and "stealing from the company," I

23 guess we can do that too.  But it should all be in that

24 number one category, because it all means the same thing.

25 It's a false -- according to the plaintiffs, a false

XIII-14

1 defamatory statement accusing James Jordan of a crime.

2          MR. VASSEGHI:  Your Honor, I think that

3 illustrates the point since Mr. Carman and Dietz both said

4 that the statements were to the effect that Mr. Jordan was

5 stealing from the company, those were the statements.

6          So the only thing we're asking is that since these

7 are in quotes, we put what actually was said, that James

8 Jordan was stealing from the company or words to that

9 effect.

10          MR. MARDEROSIAN:  That's not correct.  I asked Mr.

11 Dietz.  I don't know why we're disputing or trying to

12 interpret this.  This is subject to argument.

13          The question was, "Did Mr. Krause ever say to you

14 that Mr. Jordan is involved in criminal activity, yes or

15 no?"  Answer:  "Yes," because it was in his deposition.

16          "And was he with a gentleman by the name of Craig

17 Cooper who also indicated to you that Mr. Jordan is involved

18 in criminal activity?"  Answer:  "Yeah."

19          Now, there's no objection to those two questions,

20 and that was their testimony.  And then there is a separate

21 part of Mr. Dietz's trial testimony where he says Krause

22 said, quote, "stolen from the company."

23          So this is a witness recounting that -- the

24 witness doesn't understand the exact phrase made, but this

25 is the answers to the questions that Mr. Dietz provided.

XIII-15

1         And Doug Carman straightaway said that Krause said
2  he was stealing from the company.
3         So I think that we're really trying to cut this a
4  little too thin here.  If counsel wants to argue, then he's
5  welcome to do that, but that's what the questions and
6  answers were to that subject matter about Mr. Krause's
7  specific statements himself, aside from the emails.
8         THE COURT:  All right.  Okay.  So is it -- and
9  obviously in terms of the statements, it's up to the
10  plaintiff to proffer which statement or statements that
11  plaintiff feels were defamatory, and that's what you're
12  going to argue to the jury and I assume reference the
13  testimony.
14         MR. MARDEROSIAN:  We'll add them all then, your
15  Honor, I mean --
16         THE COURT:  No.  That's why I'm asking -- I'm
17  asking which -- what are you going to argue to the jury so
18  that I'll know what -- to make sure that the statements that
19  plaintiff is going to rely on is in the instruction --
20         MR. MARDEROSIAN:  I think -- I'm sorry, your
21  Honor.  I think it should say -- let me see the verdict form
22  question.
23         I think it should say, "James Jordan was involved
24  in criminal activity and was stealing from the company."
25         MS. COHEN:  I think that should be a second one.

XIII-16

1  "James Jordan was stealing from the company."

2      (Pause.)

3          MR. MARDEROSIAN:  The testimony is "James Jordan

4  was involved in criminal activity.  James Jordan was

5  stealing from the company.  James Jordan was" -- yeah,

6  "stealing from the company."

7          If they want -- if the Court wants us to add the

8  second one, I guess we can add that as well too.

9          THE COURT:  Either that or if you're going to

10  argue stealing from the company, I suppose it could be James

11  Jordan was involved in stealing from the company.  I suppose

12  you could change -- I mean the language that was in the

13  instruction is the one that was recited to me Friday.

14          So if you'd prefer, and if you're going to argue

15  that the defamatory statement was that James Jordan was

16  involved in stealing from the company or James Jordan was

17  stealing from the company and you have the --

18          MR. MARDEROSIAN:  How about something --

19          THE COURT:  -- citation, that's fine.

20          MR. MARDEROSIAN:  How about something like this,

21  your Honor:  "James Jordan was involved in criminal activity

22  and stealing from the company" or "by stealing from the

23  company."  "James Jordan was involved in criminal activity

24  by stealing from the company."

25          THE COURT:  Defense?

XIII-17

1          MR. VASSEGHI:  That's fine, your Honor.

2          THE COURT:  Okay.  That's what we'll do.

3          MR. MARDEROSIAN:  Is that okay?

4          THE COURT:  Yeah, that's fine.  So we'll make the

5   change on there.

6          Okay.  And then the next one would be basically

7   combining -- so that would be the first defamatory statement

8   alleged.  The second, plaintiff is proposing to pull

9   together two and three so that it would be the email in

10  Exhibit Joint 1 and I think it was in --

11         MS. COHEN:  Conjunction with --

12         THE COURT:  -- conjunction with the email in Joint

13  Exhibit 2 in then parens, with "copies of which are attached

14  to these instructions and the verdict form."

15         MS. COHEN:  That's correct, your Honor.

16         THE COURT:  All right.  Defense?

17         MR. VASSEGHI:  Your Honor, I think the problem is

18  that that's the conclusion that the jury must draw for

19  themselves, whether in fact these two emails are somehow

20  conjoined.  By saying "in conjunction with," you're making

21  that assumption for them.  That's a conclusion they need to

22  draw.

23         THE COURT:  Right.  And that's why it says -- the

24  heading is "James Jordan Claims."  So he's claiming that the

25  emails -- the first email in conjunction with the second

XIII-18

1 email.  That's what he's claiming, so that may make logical

2 sense in terms of what he's claiming --

3          MR. VASSEGHI:  Right.

4          THE COURT:  -- not what is proven but that's what

5 he's saying.

6          MR. VASSEGHI:  Right.  That's my argument.  I'm

7 not going to belabor the point, but I just want to -- it

8 seems like they're making the connection for the jury, which

9 seems to be a little bit leading, leading them into that

10 these two are somehow in conjunction with one another.

11          MR. MARDEROSIAN:  It's a verdict form, your Honor.

12 It's subject to the proof and their decision.

13          THE COURT:  Yeah.  Well, in terms of the jury

14 instruction, I don't think there's any question that's

15 what's been claimed throughout, is that the two emails

16 combined together is what formed, by inference, the alleged

17 defamatory statement.  So it's not inconsistent with what's

18 been argued throughout or presented throughout.

19          So, okay, I'll go ahead and do that.  I'll

20 combine -- number two will be the email in Exhibit Joint 1

21 in conjunction with the email in Exhibit Joint 2, and then

22 parens, "copies of which are attached to these instructions

23 and the verdict form."  Okay.

24          MS. COHEN:  Thank you, your Honor.

25          MS. VAUDREUIL:  Your Honor, on that same

XIII-19

 1 instruction --

 2          THE COURT:  Yes.

 3          MS. VAUDREUIL:  -- I think the only clarification

 4 we might need under that circumstance is if you look at

 5 number three under the liability prong where it says that

 6 these people reasonably understood the statements to mean

 7 that James Jordan had committed a crime --

 8          THE COURT:  Yes.

 9          MS. VAUDREUIL:  -- perhaps there needs to be some

10 distinction there between the statement one and what becomes

11 statement two.

12          THE COURT:  Okay.  So that would be --

13          MS. VAUDREUIL:  Because the first one says

14 "crime."

15          THE COURT:  I guess it would be understood the

16 statements to mean that James Jordan had committed a

17 crime by -- I can't remember the exact wording we agreed on

18 on paragraph one, but it would be consistent with that I

19 assume.

20          MS. COHEN:  I'm not really sure I understand

21 defense counsel's --

22          THE COURT:  Yeah, in paragraph one it originally

23 was simply "James Jordan was involved in criminal activity,"

24 and the agreement was that it would be "James Jordan was

25 involved in criminal activity" --

XIII-20

 1          MR. MARDEROSIAN:  And stealing from the company.

 2          THE COURT:  Yeah, "by stealing from the company,"

 3 something --

 4          MR. MARDEROSIAN:  "By stealing from the company."

 5          THE COURT:  And so then in liability under

 6 paragraph three, "James Jordan had committed a crime by

 7 stealing from the company," something, words to that effect.

 8          MS. VAUDREUIL:  Right.  Number three then, it's

 9 that people reasonably understood that statement to mean

10 that he had committed a crime.

11          I mean that seems fairly connected to number one,

12 but if you're going to combine the two emails together, that

13 these people reasonably inferred these two emails to mean

14 that James Jordan had committed a crime, because one of them

15 says "crime," the actual word.  And the other two emails do

16 not say that.  So I think we just need to maybe split that

17 up to account for the different statements.

18          MR. MARDEROSIAN:  I didn't get that last

19 statement.  The two emails don't say what?

20          MS. VAUDREUIL:  That he committed a crime.

21          MR. MARDEROSIAN:  No, that's not true.  It talks

22 about -- it makes --

23          MS. VAUDREUIL:  I understand that's the argument

24 but that's my point --

25          MR. MARDEROSIAN:  If I can just finish.  It

XIII-21

1  references illegal activity.  Let me get the emails here.

2            MS. VAUDREUIL:  I don't need the emails.  I've

3  seen the emails.  My point --

4            MR. MARDEROSIAN:  I've seen the emails.  I just

5  want to point out to the Court so that we're all on the same

6  page here.

7            MS. VAUDREUIL:  It's basically number three, your

8  Honor, just to account for the fact that in one of them

9  they're making an inference.

10           THE COURT:  Right.

11           MS. COHEN:  Well, I think that's inherent in the

12 beginning of the sentence, your Honor, where it says that

13 that these people reasonably understood the statements were

14 about James Jordan, number one, and that's in element number

15 two, and in element number three, that these people

16 reasonably understood the statements to mean that James

17 Jordan had committed a crime.

18           MS. VAUDREUIL:  But by lumping them together, then

19 somebody could have the answer to number one yes, but then

20 as to the emails, they might not find that there was an

21 inference.

22           I mean maybe we're splitting hairs, your Honor,

23 but we can maybe think about that and come back to it.

24           THE COURT:  Okay.  But right now, I'm going to

25 leave it the way it is.  And so really the claim on the

XIII-22

1 defamation per se, as I understand going forward is

2 plaintiff is contending the defamatory statements are the

3 criminal activity, accused of stealing, whatever, and that's

4 basically -- as I understand, that's how plaintiff is

5 proceeding in terms of his defamation claim.  Right?

6            MS. COHEN:  That's correct, your Honor.

7            THE COURT:  We're not addressing or dealing with

8 the inappropriate language sort of thing.

9            MR. MARDEROSIAN:  Correct.

10            MS. VAUDREUIL:  And just to clarify on the first

11 one, is it "criminal activity by stealing from the company"

12 or "and stealing from the company" --

13            MR. MARDEROSIAN:  I think "by" --

14            THE COURT:  Yeah, "by."

15            MS. VAUDREUIL:  Okay.  Fine.

16            MR. MARDEROSIAN:  -- probably is more specific I

17 think.

18            THE COURT:  Yeah, I agree.

19            MS. VAUDREUIL:  Okay.  Thank you.

20            THE COURT:  Okay.  Anything else then on the

21 defamation jury instruction from plaintiff's side?

22            MS. COHEN:  Not on behalf of plaintiffs, your

23 Honor.

24            THE COURT:  Anything by defense on the jury

25 instruction on defamation at page 15?

XIII-23

1            MR. PECHT:  We do, your Honor, although it's in

2   connection with a number of the defamation per se

3   instructions.

4            THE COURT:  Okay.

5            MR. PECHT:  So I don't know if you want us to go

6   into that right now.

7            THE COURT:  Yes.  Since we're dealing with the

8   defamation instructions, yes.

9            MR. PECHT:  So effectively -- and I don't know if

10  the Court has received our proposed redline changes that we

11  sent today.

12            THE COURT:  Yes.

13            MR. PECHT:  We've effectively outlined what the

14  issues are.  And one of them is that because we have a

15  common interest issue, it could be read misleading to have

16  the jury instruction as it is on number 15.  So we are

17  recommending that we sort of reorder it to make more sense.

18  And we've done that by separating out the damages section

19  here and the defamation per se, because if the jury reads

20  this right now, they would see these elements without

21  anything about the common interest and the need to find

22  malice and then they would get the section on damages

23  basically saying, oh, I can award damages even before

24  there's the common interest malice information.

25            So we suggest taking out the damages section

XIII-24

1  making that its own statement, its own instruction on

2  defamation per se damages that would come after a number of

3  these other statements, definition of "statement," fact

4  versus opinion, truth and the common interest privilege.

5  And we would suggest that the common interest privilege

6  that's currently on page 20 be moved to 17.

7           The truth which is currently on 19 be reordered to

8  18.  And fact versus opinion, which is currently on 18, be

9  moved to 20.  And the definition of "statement" moved to 19.

10          We've also recommended changing the title of these

11  so they say "Defamation Per Se" on each of them so it's

12  clear that these instructions relate to that specific cause

13  of action.

14          THE COURT:  Okay.  And plaintiff's response?

15          MS. COHEN:  Your Honor, I think as the Court has

16  them is how CACI proposes them.  I mean when you go to fact

17  versus opinion, the first sentence says "For James Jordan to

18  recover, Wonderful Citrus's statements must have been

19  statements of fact," et cetera.

20          Then on page 19, "Affirmative Defense - Truth,"

21  "Wonderful Citrus is not responsible for James Jordan's

22  harm, if any, if it proves," blah, blah, blah.

23          Then at page 20, "James Jordan cannot cover

24  damages from Wonderful Citrus on the defamation claim,"

25  et cetera.

XIII-25

1          That's how CACI sets it out.

2          Then when you go to the verdict form, it sets it

3  out exactly as it would have to be.  "Did Wonderful Citrus

4  make the following statements," et cetera.

5          And then it goes on to -- and then it goes on

6  to -- and then it goes on to the issue of "Were they

7  substantially true," "Did Wonderful Citrus fail to use

8  reasonable care," "Did Wonderful Citrus," et cetera.

9          So I don't know what the issue is.  I feel like

10 we're overemphasizing these jury instructions.  And this is

11 how CACI proposes it, even despite knowing that there are

12 affirmative defenses out there.

13         I don't really see that we should be rearranging

14 how CACI proposes it.

15         MR. PECHT:  And, your Honor, I think the issue is

16 that it's now plaintiff's burden to show malice as part of

17 the defamation case, given the application of the common

18 interest.

19         So the current instruction on page 15, given that

20 it has the actual damage with the liability issues, it

21 says -- right after liability, it says, you know, to

22 establish the claim, James Jordan must prove all of one

23 through four.  None of those say "malice."

24         And then right underneath it says -- "Actual

25 Damages" says "If James Jordan has proved all of the above,"

XIII-26

1 i.e., all of those four elements that don't contain a malice

2 element, then he's entitled to recover his actual damages.

3         So it's misleading to the jury at that point.

4 That is why we recommend taking out the damages section,

5 making it its own section and having it after the common

6 interest which requires that plaintiff prove malice prior to

7 being eligible for damages.

8         It's just a different situation here because the

9 burden is now on plaintiff to prove that malice element.  It

10 effectively becomes an element of their cause of action for

11 defamation.

12         THE COURT:  All right.  Anything else from

13 plaintiff's side?

14         MS. COHEN:  No, your Honor.

15         THE COURT:  Okay.  All right.  Yeah, I've reviewed

16 this, and I understand what defense is concerned about, but

17 I am going to go ahead and leave it the way it is.

18         And so basically with the changes that we've

19 discussed at page 15, with those changes, then those will be

20 the only changes to the "Defamation Per Se - Essential

21 Factual Elements" at page 15 and 16.

22         At page 17, I will add in the heading "Defamation

23 Per Se - Definition of 'Statement.'"  I'll add that in the

24 heading.

25         Same thing at page 18.  "Defamation Per Se - Fact

XIII-27

1  Versus Opinion."

2           Page 19, "Defamation Per Se - Affirmative

3  Defense - Truth."

4           Page 20, "Defamation Per Se - Common Interest

5  Privilege – Malice."

6           And then at page 20, the second paragraph, we

7  should add the "S" there, that Wonderful Citrus -- I'm

8  sorry.  In all instructions we're going to remove "Packing,

9  LLC."  So the only title for defendant will be "Wonderful

10 Citrus."

11          So the second numbered paragraph, "that Wonderful

12 Citrus had no reasonable grounds for believing the truth of

13 the statements."

14          MS. COHEN:  Is that going to be parenthesis "S"

15 parenthesis?  Because there are obviously two.  The jury

16 doesn't have to find both.  It can find one.  I'm not trying

17 to split hairs.  And I'm sure if they do find one, they'll

18 find the other.

19          But if they believe that Craig Cooper and Mr.

20 Krause made those comments, but maybe they think that the

21 emails weren't connected somehow, it's still defamation,

22 your Honor.

23          THE COURT:  Okay.  Now which --

24          MS. COHEN:  For number two on page 20, I believe

25 that defense counsel is proposing to add the "S" at the end

XIII-28

1  of "statements."  And I think that it should be "statement,"

2  parenthesis "S," end parenthesis, meaning it doesn't have to

3  be both statements.  It can just be one of the statements.

4          And I think when you have "statements" just with

5  the "S", it suggests to the jury they have to find both.

6          And that's particularly true, your Honor, because

7  there is a difference in terms of the temporal aspect of

8  these comments.

9          THE COURT:  Okay.  So what you're suggesting is

10  that -- so on the first -- the introductory paragraph,

11  second line, "statements" are in parens.  Are you saying --

12          MS. COHEN:  It should stay in parentheses.

13          THE COURT:  And then at subparagraph two, the

14  "statement," the "S" should be in parens?

15          MS. COHEN:  Yes, your Honor.

16          THE COURT:  Okay.  All right.

17          MS. VAUDREUIL:  I disagree with that, your Honor.

18          THE COURT:  I'm sorry?

19          MS. VAUDREUIL:  I think we disagree with that,

20  because this is shifting the burden to plaintiff, and

21  plaintiff has to prove that Wonderful Citrus had no

22  reasonable grounds for believing the truth of the

23  statements, both of them.

24          MS. COHEN:  We only have to prove one, your Honor.

25          THE COURT:  Okay.  All right.  I'll add the "S"

XIII-29

1  but I'll put in the parens at paragraph two.

2          MS. COHEN:  Thank you, your Honor.

3          THE COURT:  And obviously closing argument and

4  interpretation to the jury can -- well, I'm sorry.  In

5  closing argument, counsel can specify.  And obviously, as

6  I've indicated, I'm going to read the jury instructions

7  first, so you can certainly make reference to the jury

8  instructions and even highlight specific instructions or

9  portions of instructions.

10          MR. PECHT:  And, your Honor, even if we're not

11  modifying the "Defamation Per Se," we would ask that the

12  "Common Interest Privilege - Malice" be moved because right

13  now it's grouped with our affirmative defenses.

14          We would ask that it be put where we suggested

15  which is page 17 so that it's after the statement relating

16  to their entitlement to damages.  I think that makes more

17  sense because the first line says "James Jordan cannot

18  recover damages" and so then it would come immediately after

19  the section discussing what those damages are.

20          MR. MARDEROSIAN:  Well, I kind of like it where it

21  is, your Honor, because the first instruction talks about

22  malice separate and apart, which is the common interest

23  standard.  And the second instruction talks about oppression

24  and fraud.

25          And so when we get to the final question of the

XIII-30

1  punitive damage question, it's malice, oppression or fraud,

2  and I think it makes sense.  I mean if they find malice,

3  then not only does that override the common interest

4  privilege but we then go into the punitive damage phase as

5  well, that is malice, oppression or fraud.  So it makes

6  sense right where it is.

7          MR. PECHT:  I think counsel is mistaking the

8  malice standard for common interest with the malice standard

9  for punitive damages, which are two separate issues.

10          THE COURT:  Right.  Yeah, I'm going to leave it

11  where it's at, because basically the instruction on page 17

12  and the instruction on page 18 are simply explanatory and

13  then we get to the "Affirmative Defense - Truth."  So I'll

14  leave it where it is.

15          Okay.  I know that defense has requested the

16  at-will provision instruction in a couple of other places.

17  But I'm only going to give it once.  But again, defense can

18  certainly point that out in closing argument, in fact

19  highlight it in closing argument so the jury is aware and

20  argue what that means with respect to if the jury doesn't --

21  if the jury finds that there's an at-will provision that

22  applies.

23          MR. PECHT:  And I think we addressed that earlier

24  with the separate instruction.

25          THE COURT:  Right.  Okay.  So anything else by

XIII-31

1 defense as far as the jury instructions are concerned?

2        MR. PECHT:  One minor thing is I think there was

3 an inconsistency between using "Wonderful Citrus Packing

4 LLC" and "Wonderful Citrus."  Our preference would just be

5 to use "Wonderful Citrus" throughout.

6        THE COURT:  Yes, and that's what I'll do.  I'll

7 take out the "Packing LLC" and it will only indicate

8 "Wonderful Citrus" throughout.

9        MR. MARDEROSIAN:  Is that on the verdict form as

10 well, your Honor?

11        THE COURT:  Yes.

12        MR. MARDEROSIAN:  Yes, okay.  And so we're clear,

13 the verdict against Wonderful Citrus is a verdict against

14 the defendant, correct?

15        MR. VASSEGHI:  Yes.

16        THE COURT:  Yeah.  All right.  Okay.

17        MS. VAUDREUIL:  I think the only other issue, your

18 Honor, was the prejudgment interest instruction.

19        THE COURT:  Yeah.  Okay.  So at page 36,

20 prejudgment interest, the defense position is it's not

21 permitted in connection with James Jordan's claim for breach

22 of an employment agreement and it's indicated that's correct

23 under California Civil Code section 3288.

24        So one suggestion is that the first paragraph

25 would read "If you decide that James Jordan is entitled to

XIII-32

1  recover damages for past economic loss in one or more of the

2  categories of damages that he claims in connection with his

3  definite defamation claim, then you must," et cetera.  So

4  that's a possibility.

5        All right.  Defense position on that?

6        MR. PECHT:  That's --

7        MR. VASSEGHI:  That's what we propose, your Honor.

8        THE COURT:  Right.  Okay.

9        MS. COHEN:  Yeah, that's fine, your Honor.

10       THE COURT:  Okay.  So we'll make that one change

11 at page 36, prejudgment interest.

12       Okay.  Anything else then with respect to the jury

13 instructions from defense?

14       MR. PECHT:  I think that's all, your Honor.

15       THE COURT:  All right.  Plaintiff, any other

16 instruction issues?

17       MS. COHEN:  No, your Honor.

18       THE COURT:  Okay.  Verdict form.

19       MR. MARDEROSIAN:  Your Honor, while we're drawing

20 up the verdict form, I just want to make sure that in

21 argument, neither counsel can reference any of the claims

22 that have been dismissed, either voluntarily or per court

23 order, correct?

24       THE COURT:  That's correct.

25       MR. MARDEROSIAN:  So there would be no mention of

XIII-33

1  the age discrimination issue or the counterclaim or any of

2  the decisions by the Court as to the claims being

3  asserted --

4          THE COURT:  Right.

5          MR. MARDEROSIAN:  -- that have been dismissed.

6          THE COURT:  Right.  That's always been the

7  position of the Court.

8          Defense on that?

9          MR. VASSEGHI:  That's fine, your Honor.

10          MR. PECHT:  We already stipulated to that.

11          THE COURT:  Right.  Okay.  So on the verdict form,

12  certainly then, at minimum, I'm going to delete "Packing

13  LLC" from -- so it will only state "Wonderful Citrus."

14          And then the language under the defamation -- that

15  would be at page 3, paragraph six -- will reflect what was

16  agreed in the instruction at page 15.

17          And then agreed that at page 4, paragraph nine

18  that if the jury answers yes to that question, that is, was

19  the statement slash -- substantially true, if the answer is

20  yes, then stop here, et cetera.  So I will add that.

21          Okay.  Now, on page four, paragraph 11, there are

22  two separate instructions for malice.  One is malice with

23  respect to overcoming the conditional privilege and the

24  other is malice contained within the general punitive

25  liability instruction on malice, oppression and fraud.

XIII-34

1        So one suggestion that we had been working on

2  is --

3        MR. MARDEROSIAN:  The malice in the conditional

4  privilege is defined in the instruction itself correct, your

5  Honor?

6        THE COURT:  Yeah.  It's --

7        MR. MARDEROSIAN:  Where it talks about ill will,

8  hatred, and then the second prong, or "no reasonable grounds

9  to believe" when you go to it, yes.

10        THE COURT:  Yes, so --

11        MR. MARDEROSIAN:  Malice can either be -- a jury

12  can either reach the conclusion that malice overrides the

13  conditional privilege if they find that Wonderful Citrus

14  acted with hatred or ill will toward Mr. Jordan or that

15  Wonderful Citrus had no reasonable grounds for believing in

16  the truth of the statement.

17        And then as I understand the instruction regarding

18  the punitive component -- I saw that one as well.

19        MR. PECHT:  So the language we proposed is exactly

20  the language that counsel just used.  We just added a new 11

21  which says "In making the statements did Wonderful Citrus

22  act with hatred or ill will towards James Jordan or did

23  Wonderful Citrus have no reasonable grounds for believing

24  the truth of the statement."  And that would cover the

25  malice for the common interest privilege.

XIII-35

1      And then we combined, as typically is done, the

2  punitive damage malice into one statement that says, "Has

3  James Jordan proved by clear and convincing evidence that

4  Wonderful Citrus acted with malice, oppression or fraud in

5  making the statements."

6      MR. MARDEROSIAN:  So we're just talking about the

7  conditional privilege right now?

8      THE COURT:  Let's see.  Okay.  Well, there are

9  two.  One is the common interest privilege slash malice at

10  page 20.

11      MR. MARDEROSIAN:  Right.  And where is that

12  reflected in the verdict form, your Honor?

13      THE COURT:  Okay.  So in the verdict form --

14      MR. MARDEROSIAN:  Is that question 10?

15      MR. PECHT:  It's our proposed question 11.  It was

16  not in the original verdict form provided on Friday.

17      We modeled this after -- I've seen a few verdict

18  forms on this very issue and this is how they addressed it,

19  because I do think there's an issue of confusion of using --

20  if you use malice twice.

21      MR. MARDEROSIAN:  So is the point here that the

22  verdict form fails to use the prong hatred or ill will?  Is

23  that the point?

24      MR. PECHT:  The point is that there was no verdict

25  form question that establishes a malice for common interest

1  so effectively did not account for it.  So we propose number

2  11 which is the standard language I've seen used in verdict

3  forms that have a common interest issue for defamation.

4        And then have the typical punitive damages

5  question at the end, but it just has "act with malice,

6  oppression or fraud."  And that way, you don't have

7  confusion with the jury as to the two different malice's

8  which have different standards and --

9        MR. MARDEROSIAN:  Why do we still have 10?  If we

10 have 10 which uses the phrase "reasonable care" and then

11 you're proposing 11 in addition to that that has the

12 ill will, of course, but it also has "no reasonable

13 grounds."  Well, that seems redundant to me.  We're asking

14 the jury to answer that issue twice.

15        MR. PECHT:  So the defamation cause of action

16 requires a finding that there is a failure to use reasonable

17 care to determine the truth or falsity of the statement.

18 That question is asked before the common interest privilege

19 even gets there because you have to find as a defamatory

20 statement.  And then the malice standard for defamation

21 needs to be proved, so that is where 11 comes in.

22        In the jury verdict forms that I've seen used on

23 this, they always include both.  And if you look at the jury

24 instruction on defamation, it includes that standard.  So I

25 think plaintiff would have to require both a finding that

XIII-37

1 there's a failure to use reasonable care -- and then once

2 that's shown, you have to show the higher standard that

3 malice was involved.

4         THE COURT:  All right.  Okay.  Well, one

5 suggestion is to add the new paragraph -- let's see -- okay,

6 is to add at paragraph 11, "Has James Jordan proved by clear

7 and convincing evidence that Wonderful Citrus acted with

8 malice in making the statement/statements" -- and then I

9 would add parens "For the definition of the term 'malice' as

10 used in this question, refer to jury instruction number,"

11 and right now that would be the --

12         MS. COHEN:  Well, I don't think it's a clear and

13 convincing standard in regard to the common interest

14 privilege, your Honor.  It's just preponderance of the

15 evidence.

16         THE COURT:  Let me see.  Hold on just a second.

17         MS. COHEN:  I'm sure you're --

18         MR. PECHT:  I have seen it argued, but I do think

19 it would be an appealable issue if it was a clear and

20 convincing standard for the malice as to --

21         MR. MARDEROSIAN:  Conditional privilege.

22         MR. PECHT:  -- for the privilege.

23         THE COURT:  All right.

24         MR. PECHT:  And that is why we suggested using

25 this language specifically without using the word "malice"

XIII-38

1  because otherwise you have two malice's with different

2  standards.  It's confusing for the jury.  So we think we'd

3  be fine with using the language "Did Wonderful Citrus act

4  with hatred or ill will towards James Jordan or did

5  Wonderful Citrus have no reasonable grounds for believing

6  the truth of the statement," which is effectively how malice

7  is defined -- or is how malice is defined in the jury

8  instruction.

9           THE COURT:  Okay.

10          MR. MARDEROSIAN:  Well, I think that that probably

11 is correct, but I'm just wondering if -- and I'm looking at

12 after verdict question 10, we incorporate the new language,

13 but maybe we say "by a preponderance of the evidence" and

14 then when we get to question number -- just like question

15 number 14 on the punitive damage requirement for malice,

16 oppression or fraud, we have -- it's stated in there "clear

17 and convincing evidence."

18          So maybe in the new 11 that Mr. Pecht is

19 suggesting, that it read "In making the statements, did

20 Wonderful act with hatred or ill will toward James

21 Jordan" -- yeah, I guess "In making the statements."  Let me

22 see if I can get the language here.

23          I guess the statement could read, if we

24 incorporate the same as 14, "Has James Jordan proved by a

25 preponderance of the evidence that Wonderful Citrus acted

XIII-39

1  with hatred or ill will toward James Jordan or did Wonderful

2  Citrus have no reasonable grounds for believing the truth of

3  the statements."

4       Just so that -- and we can argue the two different

5  standards regarding malice.  The first standard applies to

6  the conditional privilege which is still a preponderance

7  standard of proof, and then when we get questions number 14

8  and 15, those questions clearly state it's by clear and

9  convincing evidence, which is accurate.

10       And so it's just something to cover when we go

11  through the verdict form with the jury during argument, your

12  Honor.

13       I don't know what Ms. Cohen thinks about that,

14  but --

15       MS. COHEN:  I mean I think all the questions up

16  until the punitive damage questions are all by a

17  preponderance of the evidence.  So I'm not sure we need to

18  call -- I mean we'll call it out for this one since --

19       MR. MARDEROSIAN:  To avoid confusion, and when you

20  talk malice --

21       MS. COHEN:   I know but none --

22       MR. MARDEROSIAN:  Oh, it doesn't mention malice?

23       MS. COHEN:  All of these questions -- no --

24       MR. PECHT:  Right.

25       MS. COHEN:  -- it wouldn't mention the word

XIII-40

1  "malice."  It just talks about --

2          MR. MARDEROSIAN:  Oh, it doesn't mention, okay.

3          MS. COHEN:  It doesn't mention it, and none of the

4  other questions talk about it.  So I --

5          MR. MARDEROSIAN:  And we can argue it.  So maybe

6  that is the easiest way to do it, your Honor, is only

7  reference the clear and convincing evidence standard to the

8  two questions that it applies to, and the jury then

9  understands that everything is preponderance of the

10  evidence.

11          MS. COHEN:  Right.

12          THE COURT:  Okay.  So the new 11 would be "Has

13  James Jordan proved that Wonderful Citrus" -- and then the

14  specific language that you're agreeing on is?

15          MS. COHEN:  I think it should be consistent with

16  the questions above, "Did Wonderful Citrus act with hatred

17  or ill will towards James Jordan or did Wonderful Citrus

18  have no reasonable grounds for believing the truth of the

19  statements."  It's a little confusing.

20          MR. PECHT:  I propose the language in the redline

21  that --

22          MS. COHEN:  Yeah, that's what I read.  I just said

23  that.

24          MR. PECHT:  No, but you had left out the "in

25  making the statements," which I think is the appropriate

XIII-41

1  standard.  It's not just that we acted will hatred or ill

2  will.  It's hatred or ill will in connection with the

3  statements.

4          MR. MARDEROSIAN:  I don't think the word is

5  "have."  Well, maybe it is.  "Or did Wonderful Citrus,"

6  okay, "have no reasonable grounds leaving the truth of the

7  statements."

8          MR. PECHT:  I think we're all using the same

9  language.

10          THE COURT:  Yeah.  Okay.  Does that work for

11  plaintiff's side?

12          MR. PECHT:  It's just that this first part in

13  making the statements that I think you haven't agreed to.

14  Everything else we have literally been saying the same

15  thing.

16          MS. COHEN:  Well, I think it's a little misleading

17  because when you look at that elements of the common

18  interest privilege instruction, the first one says that in

19  making the statements, Wonderful Citrus acted with hatred or

20  ill will, et cetera.  And the second one added that

21  Wonderful Citrus had no reasonable grounds for believing the

22  truth of the statements.

23          MR. PECHT:  Okay.  Do you want to get rid of the

24  first comma?

25          MS. COHEN:  So I'm just wondering if you

XIII-42

1   reorganize it to say "Did Wonderful Citrus act with hatred
2   or ill will towards James Jordan in making the statements or
3   did" James Jordan -- or I'm sorry, "or did Wonderful Citrus
4   have no reasonable grounds" or did -- "for believing the
5   truth of the statements."
6           It's such a -- I don't know if it's a double
7   negative or --
8           MR. MARDEROSIAN:  Should we split them?
9           MS. COHEN:  I mean I'm not trying to add more
10  questions, but it does feel a little awkward to me.  I don't
11  know how it feels to the Court or defense counsel.
12          MR. PECHT:  I'm fine with that.
13          MR. VASSEGHI:  I think it's why the "or" is in
14  there.  It's either/or.
15          MS. COHEN:  Right.  It's just "Did Wonderful
16  Citrus have no reasonable ground" -- it just feels a little
17  awkward to me but --
18          MR. PECHT:  I'm fine with it being changed around,
19  so it's "Did Wonderful Citrus act with hatred or ill will
20  towards James Jordan in making the statements or did
21  Wonderful Citrus have no reasonable grounds for believing
22  the truth of the statements."
23          That seems fine to me.
24          MR. MARDEROSIAN:  Well, as long as the jury
25  doesn't feel that they have to have both standards to answer

XIII-43

1    yes to that question.

2           THE COURT:  Yes, that's why there is an "or" in

3    there.

4           MR. MARDEROSIAN:  There is an "or" there, so I

5    guess it can be argued.

6           MS. COHEN:  And the instructions say "or."

7           MR. MARDEROSIAN:  It can be argued then.  And

8    there is an instruction, yes.

9           I think that's fine, your Honor.

10          THE COURT:  Okay.  All right.  We'll do that then.

11          MR. MARDEROSIAN:  Are you okay with that?

12          MS. COHEN:  Uh-huh.

13          THE COURT:  Okay.

14          MS. COHEN:  And then, your Honor, I think we just

15   need to add some guidance --

16          MR. STEWART:  Can you guys slowly state the

17   language you want for 11?

18          MS. COHEN:  Sure.  "Did Wonderful Citrus act with

19   hatred or ill will towards James Jordan in making the

20   statements or" --

21          MR. MARDEROSIAN:  "Or did Wonderful Citrus have no

22   reasonable grounds for believing the truth of the

23   statements."

24          MR. PECHT:  That's fine.

25          MR. MARDEROSIAN:  So I think that, in conjunction

XIII-44

1  with the instruction, I think it can be clarified via

2  argument, your Honor.

3          THE COURT:  Okay.  And then the separate verdict

4  form on punitive liability/punitive damages would be --

5  defense is suggesting --

6          MR. MARDEROSIAN:  Shouldn't we just combine it,

7  your Honor?  In your experiences, has it been one question

8  to read:  "Has James Jordan proved by clear and convincing

9  evidence that Wonderful Citrus acted with malice, oppression

10 or fraud?"

11         I noticed that you have two separate questions

12 here and I think I'm okay with just combining that.  I

13 thought you separated it because of the common interest

14 issue, but obviously the definition of malice for the

15 conditional privilege is different --

16         THE COURT:  Different, yeah.

17         MR. MARDEROSIAN:  -- than the standard that would

18 lead us into the punitive phase.

19         THE COURT:  Yes.  So defense has proposed at the

20 last page there, the last question, question 15, would be:

21 "Has James Jordan proved by clear and convincing evidence

22 that Wonderful Citrus acted with malice, oppression or fraud

23 in making the statements?"

24         MR. MARDEROSIAN:  Yeah, I'm good with that, in one

25 question.

XIII-45

1          MS. COHEN:  Your Honor, just before that, I think

2   after question number 14, I think the jury needs the

3   italicized direction to answer question number 15.

4          THE COURT:  Okay.

5          MR. PECHT:  We agree.

6          THE COURT:  Okay.

7          MR. VASSEGHI:  And, your Honor, just like you have

8   put boxes for the various claims, we would like to have one

9   for the punitive so the jury understands that this is a

10  punitive damages question, the last question.

11         MS. COHEN:  I mean it is part of the defamation

12  claim.  It's not really its own separate claim.  I mean if

13  they find no defamation, they don't even answer the punitive

14  damage questions.  They can find defamation but no punitive

15  damages, or they can find all of it.  But punitive damages

16  isn't really a separate standalone claim, so I'm not --

17         MR. VASSEGHI:  Your Honor, I'm not suggesting that

18  it's a separate claim.  It's just an indicator to the jury

19  what it is that they are being asked about.  That's all.

20         MR. MARDEROSIAN:  Yeah, I don't think that we

21  should highlight it.  It's not a standalone claim.  It's

22  just a form of damages.

23         THE COURT:  Yeah, that's fine, because basically

24  the two big categories are the --

25         MR. MARDEROSIAN:  Employment.

XIII-46

1          THE COURT:  -- the two that have been highlighted.

2    One is a breach of employment contract and then the other is

3    the defamation.  And everything flows through on the

4    defamation.  So I won't highlight -- I won't box it in.

5          All right.  And then we do need, as you indicated,

6    after -- right after the question at page six, question 14,

7    we add back in "If you answer yes," et cetera, "If you

8    answer no," et cetera.

9          MS. COHEN:  I think question 14 is they have to

10   answer that.

11         THE COURT:  Right.  No, but I mean after that

12   depending on how they answer that so -- in terms of getting

13   into liability, punitive damages.  Wasn't that the

14   suggestion, that --

15         MS. COHEN:  I just said "Please proceed to

16   question number 15," because if they answer question 13, the

17   instruction says, "If you found no actual damages for either

18   C or D, then answer question number 14."  And then it says,

19   "If you found actual damages for both C and D, then proceed

20   directly to question number" and at the time it was 14, but

21   it would be the new 15.

22         And then so -- if they have to answer question 14,

23   then they would have to answer question 15.

24         THE COURT:  Okay.  So the instruction then would

25   be following --

XIII-47

1          MS. COHEN:  Question 14 and it would say "Please
2    proceed to question 15."

3          THE COURT:  Okay.  All right.

4          MS. COHEN:  Or I guess the numbering -- I'm
5    looking at the redline.  But if you're looking at the
6    verdict form itself, your Honor --

7          THE COURT:  Yes.

8          MS. COHEN:  -- the Court's verdict form, it's
9    question number 13, "What are the damages you award James
10   Jordan for the assumed harm to his reputation," et cetera.
11   And it says, "You must award at least a nominal sum, such as
12   one dollar."

13         And between that question number 13 and the
14   question about punitive damages, there should be an
15   italicized instruction that says, "Please proceed to
16   question number" -- in this case, in the Court's verdict
17   form, 14.

18         MR. MARDEROSIAN:  Yes.

19         THE COURT:  Okay.  Got it.  Okay.  All right.

20         MR. MARDEROSIAN:  Your Honor, on that note, I
21   believe there's a -- if hypothetically we start at 9:00 and
22   let's say that after instructions and argument, the jury
23   goes out at 11:30 and they come back after lunch at 1:30 to
24   deliberate, and if for some reason we have a verdict by 3:00
25   or 3:30, I think that there's a stipulation.

XIII-48

1           And if the verdict does answer the question

2  regarding punitive damages, how soon can we have the

3  defendants present the financial witness to us so that we

4  can proceed with that phase?  Or would the Court bring the

5  jury back the next day or -- but I would like some

6  indication on how soon.

7           And I wasn't involved in the stipulation.  Maybe

8  Ms. Cohen can -- but I believe there's a stipulation that

9  they can produce someone to lead the jury on to the

10  financial net worth of Wonderful Citrus.  And I just need to

11  know how long it will take to get that witness here, because

12  I don't want the jury to believe that -- you know, you've

13  seen this before where, you know, when we talk about the

14  phases that they'd have to come back.  I don't want them to

15  think that there are, oh, another two days of evidence here

16  and -- you know, and I want to get this done and all of

17  that.

18           So I want to be able to comment on that, but I'd

19  like some indication.  Is the witness going to be available

20  within an hour or two of the verdict or --

21           MR. VASSEGHI:  Your Honor, it will most likely be

22  the following day.

23           THE COURT:  All right.  Okay.  Yeah, and I'm going

24  to guess, by the time we do jury instructions and closing

25  arguments, we might be close to the afternoon.  Then again,

XIII-49

1 the jury has to deliberate.  We don't know how quickly that

2 will go.

3        So right now what I'm thinking is, if the jury

4 finds liability damages and punitive liability, then no

5 matter where we finish up -- if we finish all of that up and

6 arrive at a verdict no matter what time on Tuesday,

7 regardless, we'll have them come back at 9:00 o'clock on

8 Wednesday for the punitive damages.

9        MR. MARDEROSIAN:  And I take it it would be one

10 witness on the financial issue?  One witness?

11        MR. VASSEGHI:  I believe so, yes.

12        MR. MARDEROSIAN:  Mr. Krause or --

13        MR. VASSEGHI:  It could be Mr. Krause.  It could

14 be the CFO.

15        MR. MARDEROSIAN:  Who -- oh.

16        MR. VASSEGHI:  The CFO.

17        MR. MARDEROSIAN:  Okay.  So one witness though,

18 right?

19        MR. VASSEGHI:  Correct.

20        MR. MARDEROSIAN:  Okay.

21        THE COURT:  And both sides are entitled to closing

22 argument on punitive damages also, so we'll factor that in.

23        Okay.  So anything else with respect to the

24 verdict form by either side?

25        MR. PECHT:  Yes, your Honor.  We had an additional

XIII-50

1  issue with a conflict between the damage provisions for

2  defamation and for the implied employment agreement, which

3  is I believe 5 and I think what the Court had as 12, but

4  under the revisions is now 13.

5         And the issue we had is that there is a potential

6  for double recovery here, given that the implied agreement

7  asked for all past economic and future economic losses

8  relating to his discharge and then on the defamation damages

9  under what is the Court's 12 but will become 13, it asks for

10  all harm to James Jordan's property, business, trade,

11  profession or occupation.

12         In the event that the jury were to find on both

13  these claims, we think that the way this verdict form is

14  structured, it invites them to find twice for the damages

15  relating to damages to his business, profession, occupation,

16  which would encompass what would be the losses from his

17  employment.

18         So we've asked for a sentence after A that "In

19  calculating item A, you must exclude the total damages, if

20  any, awarded under question number 5, line C above," to

21  avoid a double recovery there.

22         THE COURT:  All right.  Plaintiff's side?

23         MS. COHEN:  I think the problem, your Honor, now

24  that -- you know, we can recover prejudgment interest for

25  one and not the other, so it gets -- I mean it's a little

XIII-51

1 confusing as to what we're supposed to do here if they -- if

2 they award the full amount of economic damages that

3 plaintiffs are seeking in regard to breach of employment

4 contracts and then they get to defamation and it says "If

5 you've already awarded that, don't award it again" and

6 actually in -- yeah, then it -- and actually the verdict

7 form, in looking at it, doesn't include a pre-judgment

8 interest line.

9          Do you want to --

10          Can I have a moment, your Honor, to confer with

11 Mr. Marderosian?

12          THE COURT:  Sure.

13      (Pause.)

14          MS. COHEN:  The issue is that there's concern

15 about double damages, meaning that the jury has potential to

16 award the damages here in response to the breach of an

17 implied --

18          MR. MARDEROSIAN:  Employment --

19          MS. COHEN:  -- and then award them again in regard

20 to the defamation claim.

21          MR. MARDEROSIAN:  In regard to what question under

22 12 are you referring to that may cause the same --

23          MR. PECHT:  12A.

24          MR. MARDEROSIAN:  12A.

25          THE COURT:  Well, it would be --

XIII-52

1            MR. MARDEROSIAN:  Yeah, I am simply going to argue

2    that for both of those sections, your Honor, based on the

3    testimony of Ms. Rizzardi, that the number would remain the

4    same in 5C that would be in 12A.  That's what the evidence

5    is, meaning that because of the breach of the implied

6    contract, he suffered "X" damages like she indicated and she

7    gave the prejudgment figure in there.  So that's -- 5C, I

8    would tell the jury put that number in there.

9            As to 12A, I would tell them it's the same number.

10   You can disregard that one because I believe that would be

11   redundant to the question, harm to James Jordan's property,

12   business, trade -- no, maybe I'm wrong.  Harm to James

13   Jordan's property, business, trade, profession or

14   occupation.  There was testimony that vendors won't work

15   with him in regards to his own personal ranches, and I think

16   that question is different.

17           I don't think that there's room for confusion

18   there, and I would tell the jury it's a separate

19   consideration of damages, meaning 12A would be a separate

20   consideration of damages, not to be redundant with 5C.  It's

21   a separate area of damages.

22           MR. PECHT:  And I think that's reflected in my

23   requested revision, essentially saying that no damages

24   awarded under 5C should be considered in item -- what was

25   12A, because otherwise I do think there's a serious risk of

XIII-53

1  a jury awarding twice the damages in connection with his

2  lost employment.

3          MR. MARDEROSIAN:  Yeah, but we'd giving up our

4  prejudgment interest.

5          MR. PECHT:  Well --

6          MR. MARDEROSIAN:  I think this is subject to

7  argument, your Honor.  They're not going to double up on the

8  damages.  I mean defense counsel can address that.  I'll

9  address that as well, but I'm not going to give up on the

10 prejudgment damages, and I think that's what this is

11 requiring.  Why would I do that.

12         So, you know, I'm not looking for redundant

13 damages or doubling the damages for the same loss.  I

14 wouldn't do that.  But 12A seems to be a different arena of

15 damages related to the defamation.

16         THE COURT:  Okay.  Anything else then, defense

17 side?

18         MR. PECHT:  No, your Honor.

19         THE COURT:  All right.  Okay.  I agree, they are

20 distinguishable damages on the two separate claims, and so I

21 will go ahead and leave the way they are, which would be the

22 old paragraph -- or question 5 and question 12 with respect

23 to the damages and breaking them down.  They'll remain the

24 same.

25         Okay.  Anything else, defense, on the verdict

XIII-54

1  form?

2          MR. PECHT:  No, your Honor.

3          THE COURT:  Okay.  Anything else for plaintiff on

4  the verdict form?

5          MS. COHEN:  No, your Honor.

6          THE COURT:  Okay.  Anything else, either the

7  verdict form or the jury instructions that we've just

8  discussed?  Anything else you can think of?

9          Okay.  What I propose then is -- Mr. Stewart is

10  working on these and we'll get them -- I don't necessarily

11  need you to wait around to see.  We might be able to email

12  them to you, or depending -- you can wait a little bit.  Let

13  me check with Mr. Stewart to see and then he can just come

14  out and let you know.  We'll email it to you if he can get

15  it to you right away.

16          If you want, you can take a quick look just to see

17  the changes, make sure that they are what was ordered by the

18  Court or agreed upon, just to make that the language is

19  correct.

20          If it takes us more time and we email it to you,

21  then at 8:30 tomorrow morning, we'll reconvene.  But if you

22  see something -- hopefully we'll get it to you so you can

23  take a look at it before we leave today.  If not, if you

24  look it over -- and even if we get to you today, if you look

25  it over tonight and you see something, email us right away

XIII-55

1  tonight so that at 8:30 tomorrow morning we can address any

2  other thoughts or concerns you have.

3          Otherwise, those will be the finals with respect

4  to the jury instructions and the verdict form.

5          MR. MARDEROSIAN:  That's probably a better

6  procedure, just to email us so Mr. Stewart doesn't have to

7  rush with these changes, your Honor.  But I'll do it any way

8  the Court is comfortable with.

9          THE COURT:  Okay.  Let me check with him and we

10  might need you to stay around just in case we want to make

11  sure, okay, was this the exact language.  So it probably

12  will be quicker since we don't have the court reporter who

13  might go through her transcript.

14          We might be able to pull up on ECRO specific

15  areas.  But if you just wait around to see if we need

16  clarification on the exact language that was agreed to, that

17  way there's no confusion there.  And then at some point if

18  we decide, okay, we'll get you the information, the verdict

19  form and the jury instructions by email, we can do that and

20  you can leave.

21          If you can just wait around a bit before we say,

22  okay, we'll see you tomorrow morning at 8:30.

23          So this will conclude this proceeding.

24          MS. COHEN:  Wait, I'm sorry.

25          THE COURT:  Oh, I'm sorry.  Yes.

XIII-56

1          MS. COHEN:  I'm sorry, your Honor.  In looking at

2  the prejudgment interest instruction which is on the Court's

3  page 36, the last paragraph says, "Whether James Jordan

4  should receive an award of prejudgment interest on all, some

5  or none of any past economic damages that you may award is

6  within your discretion" -- I think there should be a period

7  there.  But then it says "If you award these damages to

8  James Jordan, you will be asked to address prejudgment

9  interest in the special verdict form."

10          But I don't think that the special verdict form

11  actually has a space for that.

12          MR. MARDEROSIAN:  We should just take that last

13  sentence out, your Honor, because the number that I'm going

14  to give the jury from our perspective incorporates the

15  prejudgment interest already.

16          THE COURT:  Okay.  Defense on that?

17          MR. VASSEGHI:  Your Honor, I think it probably

18  just makes sense to -- yes, to take that out because that's

19  going to confuse the jury.

20          MR. MARDEROSIAN:  Right.

21          THE COURT:  Okay.  All right.  We'll do that then.

22          MS. COHEN:  Thank you, your Honor.

23          THE COURT:  Anything else?

24          MS. COHEN:  No, your Honor.  I apologize.

25          THE COURT:  Oh, no, no.  We need to get all this

XIII-57

1  taken care of today.

2          Okay.  So if you'd just stand by for a moment and

3  we'll get back to you right away.

4          MS. COHEN:  Thank you, your Honor.

5          MS. VAUDREUIL:  Your Honor, just to clarify on

6  counsel's last statement about the prejudgment interest

7  being calculated and the numbers he's going to present, I

8  just want to check what interest rate he's going to be

9  using, if that's prescribed by the code.

10          MS. COHEN:  I think it's in the Stephanie Rizzardi

11  report.

12          MR. MARDEROSIAN:  Are you okay with his time line?

13          MS. COHEN:  Yes.

14          MR. MARDEROSIAN:  We're good with it.

15          THE COURT:  Okay.  We'll be back.

16      (Proceedings recessed briefly.)

17          THE COURT:  All right.  Back on the record to get

18  an update on the jury instructions and verdict form.

19          Plaintiff's side?

20          MS. COHEN:  Yes, your Honor.  And I apologize for

21  not catching this before, but the Court included in its

22  packet as instruction number 24, which is page 26, the CACI

23  instruction which is based on 2404, "Breach of Employment

24  Contract - Unspecified Term - 'Good cause' Defined."

25          It is the plaintiff's position -- and I believe

XIII-58

1  that the defendant also agrees -- that the instruction

2  should actually be 2405, "Breach of Implied Employment

3  Contract - Unspecified Term - 'Good Cause' Defined -

4  Misconduct," because that instruction applies when there is

5  a dispute of fact as to whether misconduct actually

6  occurred.

7          And in looking at the use notes below 2405, it

8  says, "This instruction should be given when there is a

9  dispute as to whether misconduct in fact occurred."  And it

10 cites the Cotran case, 17 Cal.4th 93, 1998.

11         And in looking at the instruction 2404, the

12 directions for use indicate that when the reason given for

13 discharge is misconduct and there is a factual dispute

14 whether the misconduct occurred, then the court should give

15 CACI 2405, instead of this instruction.

16         THE COURT:  All right.  Defense?

17         MR. PECHT:  We are fine with that substitution,

18 your Honor.

19         THE COURT:  All right.  That will be the order

20 then.  We'll substitute that one in.

21         MS. COHEN:  Okay.  And then there's one other

22 issue.

23         In regard to the Court's special instruction,

24 Court Instruction number 23 -- thank you -- it's plaintiff's

25 position that it should read:  "If you find that there is an

XIII-59

1  at-will provision in an express written agreement between

2  the parties, then there may not be an implied agreement to

3  the contrary."

4            I think the way it currently reads is a little bit

5  vague.  And so after "express written agreement," it should

6  include "between the parties."

7            THE COURT:  All right.  Defense?

8            MR. PECHT:  We're also fine with that, your Honor.

9            THE COURT:  All right.  We'll make that change

10 also.

11           MR. MARDEROSIAN:  Thank you, your Honor.

12           MS. COHEN:  Everything else looked good to us,

13 your Honor.

14           THE COURT:  All right.  Defense, anything else?

15           MR. PECHT:  We're fine with everything else.

16           THE COURT:  Okay.  All right.  So this -- and make

17 the change.  So the only thing that will change -- and I

18 think Mr. Stewart has already done it -- substituting in

19 CACI 2405 instead of 2404.  And that would be the Court's

20 instruction number 24, page 26.

21           And then we'll make that change then on

22 instruction number 23 at page 25 to add that brief phrase.

23           "Between the parties"?

24           MS. COHEN:  Yes, your Honor.

25           THE COURT:  Okay.  And so that will be it.

XIII-60

1        So those will be the final instructions, but we'll
2   still meet tomorrow morning at 8:30 in case there are any
3   last-minute issues that we need to address.
4        If so, we'll address them before the jury comes
5   in.  If not, I'll let you continue with your preparation.
6        My thought is that at 9:00 o'clock, the jury will
7   come in.  I'll read jury instructions.  We'll take a
8   15-minute break.  And the reason for that is if I read the
9   instructions, I'm not exactly sure how long it'll take,
10  maybe half an hour.  But in case plaintiff's counsel needs
11  more than an hour, I don't want to break up closing so there
12  will be a full -- a potential of a full hour and a half for
13  closing argument for plaintiff's side.  Take a 15-minute
14  break and then we'll do defense side, 15-minute break,
15  plaintiff rebuttal.
16       And there are three instructions that I reserve
17  and read at the very end, our Court instruction number 10
18  "Duty to Deliberate" at page 11; Court instruction number
19  11, "Communication with the Court," page 12; Court
20  instruction number 12, "Return a Verdict" at page 13.
21       Okay.  Those -- I read those just before the jury
22  begins deliberations after closing arguments.  Okay?
23       Now -- and then time frame wise, I don't want to
24  break up anybody's closing argument.  If it comes close to
25  an hour and a half or whatever, if we take a break, I'll try

XIII-61

1    to see where you're at a convenient breaking point.  So

2    we'll work it from there.

3           Okay.  Tomorrow morning, if you'll give me a rough

4    estimate of your time for your closing so I can make sure

5    that I'm alerted in terms of taking a break at an

6    appropriate time.

7           Other than that, anything further by plaintiff's

8    side tonight?

9           MR. MARDEROSIAN:  No, your Honor.

10          THE COURT:  Defense side?

11          MR. PECHT:  No, your Honor.

12          THE COURT:  Okay.  We'll see you tomorrow morning

13   at 8:30.

14          MS. COHEN:  Thank you very much, your Honor.

15          MR. MARDEROSIAN:  Thank you for your help.

16          THE COURT:  Sure.

17      (Proceedings concluded.)

18

19

20

21

22

23

24

25

XIII-62

1          I certify that the foregoing is a correct

2    transcript from the electronic sound recording of the

3    proceedings in the above-entitled matter.

4

5    /s/Crystal Thomas                    10/12/19
     Transcriber, AAERT CERT *654         Date
6

7    FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

8

9    /s/L.L. Francisco
     L.L. Francisco, President
10   Echo Reporting, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*